John Lynn Smith (SBN 154657)
(E-Mail: jlsmith@reedsmith.com)
Eric M. McLaughlin (SBN 200867)
(E-Mail: emclaughlin@reedsmith.com)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA  94120-7936

Telephone:    (415) 543-8700
Facsimile:    (415) 391-8269

Attorneys for Defendant
REDWOOD LANDFILL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WASTE MANAGEMENT INC., REDWOOD LANDFILL INC. and DOES 1-10, inclusive,<br><br>Defendants. | No.: C-07-5058 WHA<br><br>**DEFENDANT REDWOOD LANDFILL, INC.'S NOTICE OF MOTION AND MOTION FOR AN ORDER DISMISSING THE COMPLAINT;  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          December 20, 2007<br>Time:         8:00 a.m.<br>Place:         Courtroom 9, 19th Floor<br>Compl. Filed: October 1, 2007<br>Trial Date:   None Set<br><br>Honorable William Alsup |

# TABLE OF CONTENTS

Page

I INTRODUCTION ...................................................................................................................1

II STATEMENT OF THE ISSUES TO BE DECIDED......................................................................3

III FACTUAL AND PROCEDURAL BACKGROUND......................................................................3

IV LEGAL ANALYSIS....................................................................................................................4

    A. This Court Should Dismiss Plaintiff's Clean Water Act Claims Pursuant to FRCP 12(b)(1) For Lack Of Subject Matter Jurisdiction. ...........................................4

        1. River Watch's Clean Water Act Notice Is Legally And Factually Inadequate. ..................................................................................................................6

            a. Plaintiff's Notice That Redwood Violated Terms Of Its General Stormwater Permit Does Not Provide Redwood With The Required Information To Allow Redwood To Identify And Correct The Alleged Problem............................................7

                i. Plaintiff's Notice That Redwood Allegedly Discharges Storm Water Containing Pollutants and Non-Storm Water Pollutants Does Not Provide The Required Information To Allow Redwood To Identify And Correct The Alleged Problems. ..............................7

                ii. Plaintiff's Notice That Redwood Did Not Develop or Adequately Implement Its Storm Water Pollution Prevention Plan or Monitoring Program Does Not Provide Redwood With The Required Information To Allow Redwood To Identify And Correct The Alleged Problem. ...................................................14

            b. Plaintiff's Notice That Redwood Discharges Pollutants In the Absence of a NPDES Permit Does Not Provide Redwood With The Required Information To Allow Redwood To Identify And Correct The Alleged Problem...................16

V CONCLUSION.........................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.,
  116 F.3d 814 (7th Cir. 1997)..................................................................................6

California Sportfishing Protection Alliance v. City of West Sacramento,
  905 F.Supp. 792 (EDCA Oct. 24, 1995)....................................................10, 13, 14

Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy,
  305 F.3d 943 (9th Cir. 2002)...................................................................11, 12, 13

Gwaltney v. Chesapeake Bay Found., Inc.,
  484 U.S. 49 (1987)..................................................................................................5

Hallstrom v. Tillamook County,
  493 U.S. 20 (1987)..................................................................................................5

Kokkonen v. Guardian Life Ins. Co. of America,
  511 U.S. 375 (1994)................................................................................................4

Nat'l Resources Defense Council v. Southwest Marine, Inc.,
  236 F.3d 985 (9th Cir. 2000).............................................................................6, 14

Northern California River Watch v. Lake County Sanitation Dist.,
  2004 WL 3154580 (NDCA Sept. 2, 2004).........................................................12, 13

San Francisco BayKeeper, Inc. v. Tosco Corp.,
  309 F.3d 1153 (9th Cir. 2002)......................................................6, 9, 10, 11, 12, 13

Southwest Center for Biological Diversity v. Bureau of Reclamation,
  143 F.3d 515 (9th Cir. 1998)................................................................................5, 6

Stock West, Inc. v. Confederated Tribes,
  873 F.2d 1221 (9th Cir. 1989)................................................................................4

Washington Trout v. McCain Foods, Inc.,
  45 F.3d 1351 (9th Cir. 1995)..................................................................................5

Waterkeepers Northern California v. AG Industrial Manuf. Inc.,
  375 F.3d 913 (9th Cir. 2004).................................................................11, 12, 13

## STATUTES

33 U.S.C. § 1365(b)(1)(A)..............................................................................................4

40 C.F.R. § 135.3(a) (1973)......................................................................................5, 14

Federal Rule of Civil Procedure 12(b)(1)...................................................................1, 4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

On December 20, 2007 at 8:00 a.m. in Courtroom 9 of the above-entitled court, Defendant Redwood Landfill, Inc. ("Redwood")[1] will move for an order dismissing the complaint on the ground that this Court does not have subject matter jurisdiction over Plaintiff Northern California River Watch's ("Plaintiff" or "River Watch") claims for violation of the Clean Water Act ("CWA"). The Court lacks subject matter jurisdiction over these claims because Plaintiff failed to satisfy the notice requirements that are a mandatory condition precedent to jurisdiction over its CWA claims. This Motion will be based on this Notice and Motion, the Memorandum of Points and Authorities and the Request for Judicial Notice, the pleadings and court files in this matter, and such additional evidence or argument that may be presented at the hearing.

By this Motion, Redwood seeks an order from the Court dismissing Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### INTRODUCTION

The Redwood Landfill facility, located in Marin County ("Landfill"), operates under the oversight of no fewer than four regulatory agencies and is in full compliance with all permits and laws related to this matter. Thus, when the Landfill's owner and operator, Redwood Landfill, Inc. ("Redwood"), received Plaintiff's Notice of Violations and Intent to File Suit Under the Clean Water Act ("CWA Notice"; attached as Exh. A to the Complaint) for alleged violations of these permits and for unauthorized discharges, Redwood was understandably baffled.

To make matters worse, this is not the first complaint filed by River Watch against Redwood concerning alleged CWA violations at the Landfill. In September 2003, River Watch filed a complaint against Redwood very similar to the one at issue here (USDC NDCA Case No. C-03-3991

---

[1] Waste Management, Inc. has been dismissed without prejudice from this action by stipulation and makes no appearance by or through this motion.

EMC).[2] In the face of a motion to dismiss very similar to this one, and in apparent acknowledgement that its 2003 notice letter also contained legal deficiencies, Plaintiff voluntarily dismissed this prior complaint.

Despite this history, Plaintiff has decided to pursue Redwood again, and sent the CWA Notice to Redwood containing many of the same vague and legally deficient allegations as those raised in Plaintiff's 2003 notice letter. Similar to the 2003 notice letter, the CWA Notice here failed to provide the statutorily required specifics of the alleged "violations," making it impossible for Redwood to determine what was wrong or how to remedy the alleged wrong. Consequently, as before, Redwood informed River Watch in writing that the Landfill was in full compliance with its permits and that River Watch must be looking at incorrect data. Redwood also requested, as it did in 2003, more specific information from River Watch so it could identify the alleged violations occurring at the Landfill, if any, and correct them. After all, the intent behind the CWA's mandatory pre-litigation notice provisions is to identify the alleged problems with enough specificity to allow the violator an opportunity to fix them, thereby avoiding the time and expense of litigation. Nevertheless, River Watch declined the opportunity to correct its deficient notice and filed this lawsuit anyway.

River Watch's CWA Notice is legally inadequate, and consequently, its complaint should be dismissed for lack of subject matter jurisdiction. The United States Supreme Court and the Ninth Circuit strictly construe the CWA's requirements concerning the notices of intent to sue served prior to filing a CWA action, particularly the requirement that they describe the alleged violation with reasonable specificity. These Courts have also held that if a plaintiff does not comply with the CWA's mandatory notice requirements, its complaint must be dismissed for lack of subject matter jurisdiction. River Watch's generalized notice does not pass muster. It fails to provide even the bare minimum of detail sufficient to inform Redwood of the alleged CWA violations occurring at the Landfill so it can determine how to remedy them. Therefore, River Watch's complaint must be

---

[2] The complaint in the prior action, and the two 60-day notice letters attached thereto as Exhibits A and B, are attached as Exhibit A to Redwood's Request for Judicial Notice, filed contemporaneously with this motion.

dismissed because its notice is legally deficient, and therefore, subject matter jurisdiction over River Watch's CWA claims does not attach.

## II

## STATEMENT OF THE ISSUES TO BE DECIDED

The issue to be decided by this Court on this motion is whether Plaintiff's notice of intent to file suit for alleged violations of the Clean Water Act complies with the statute's mandatory pre-lawsuit notice requirements.

## III

## FACTUAL AND PROCEDURAL BACKGROUND

Redwood owns and operates the Landfill, located in Novato, California in northeast Marin County. Beginning in 1958, operations at the Landfill have included solid waste disposal, yard waste processing and composting, equipment maintenance, sludge storage and processing and various other landfill support activities for the communities in and surrounding Marin County. The Landfill property is approximately 600 acres, and the landfill operations described above occur on approximately 420 of those acres. The Landfill is the only landfill facility located in Marin County.

The Landfill is regulated by no fewer than four oversight and permitting agencies. These are the State of California Integrated Waste Management Board, Marin County Environmental Health Services, Bay Area Air Quality Management District and the California Regional Water Quality Control Board, San Francisco Bay Region. The Landfill is operating in full compliance with all of the permits issued by these agencies that are relevant to this action, and does not have any outstanding violations.

On February 6, 2007, River Watch, an alleged 501(c)(3) non-profit corporation, sent the CWA Notice to Redwood notifying it of an intent to file suit under the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"). Redwood responded on March 9, 2007, explaining that due to the nonspecific and superficial information in Plaintiff's CWA Notice, Redwood did not understand the nature of the Clean Water Act violations being alleged, how the alleged violations

occurred, where they occurred or when they occurred – all requirements of a valid notice of intent to sue under the CWA. Redwood further explained that not only did it fail to understand River Watch's alleged violations, but Redwood's records did not evidence any discharges of pollutants that exceeded permitted limits. River Watch replied that its CWA Notice was adequate and made no effort to amend the CWA Notice or respond to Redwood's detailed concerns.

On October 1, 2007, River Watch filed the complaint against Redwood seeking injunctive relief, civil penalties, restitution and remediation under the CWA.

## IV

## LEGAL ANALYSIS

**A.  This Court Should Dismiss Plaintiff's Clean Water Act Claims Pursuant to FRCP 12(b)(1) For Lack Of Subject Matter Jurisdiction.**

Federal Rule of Civil Procedure ("FRCP") 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. River Watch, the party invoking the jurisdiction of this Court, has the burden of establishing that jurisdiction exists. <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994). In fact, the court presumes lack of jurisdiction until the plaintiff establishes otherwise. <u>Id.</u>; <u>Stock West, Inc. v. Confederated Tribes</u>, 873 F.2d 1221, 1225 (9th Cir. 1989). Redwood moves to dismiss this action on the grounds that River Watch did not meet mandatory conditions precedent to the filing of a citizen's suit under the CWA.

A citizen cannot sue under the Clean Water Act without serving notice of its intent to file suit at least sixty days prior to commencing suit. 33 U.S.C. § 1365(b)(1)(A). The Clean Water Act provides that notice "shall be given in such manner as the [EPA] Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b). The EPA issued regulations specifying that:

///
///
///
///
///

> Notice . . . shall include sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated, the activity alleged to constitute a violation, the persons or person responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address and telephone number of the person giving notice.

40 C.F.R. § 135.3(a) (1973).[3]

The purpose of the notice is to give the defendant "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit" and to give governmental regulators an opportunity to take action. Gwaltney v. Chesapeake Bay Found., Inc., 484 U.S. 49, 59-61 (1987).

If the plaintiff does not comply with the notice provisions, then the suit must be dismissed because the mandatory condition precedent to subject matter jurisdiction has not been fulfilled. Hallstrom v. Tillamook County, 493 U.S. 20, 31-33 (1987) (strictly construing the notice requirements prior to commencing RCRA action, Court dismissed suit because plaintiff did not give mandatory 60-days notice). In the Ninth Circuit, if the notice does not strictly comply with the requirements, the case must be dismissed even if the deficiencies are merely technical. Washington Trout v. McCain Foods, Inc., 45 F.3d 1351, 1354 (9th Cir. 1995) (because two named plaintiffs were not listed in the notice, the court found the notice insufficient as required by the regulations and dismissed the action for lack of subject matter jurisdiction). "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit." Southwest Center for Biological Diversity v. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998) (applying Hallstrom to the same notice requirements under the Endangered Species Act).

In discussing whether notice was sufficient, the Ninth Circuit stated, "[i]n practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so

---

[3] The CWA notice requirements are virtually identical to the pre-lawsuit notice requirements under the Resource Conservation and Recovery Act ("RCRA") because they are both modeled after section 304 of the Clean Air Act Amendments. Hallstrom v. Tillamook County, 493 U.S. 20, 23, n.1 (1987); Washington Trout v. McCain Foods, Inc., 45 F.3d 1351, 1353, n.3 (9th Cir. 1995). As such, case law interpreting a notice requirement modeled after section 304 of the Clean Air Act Amendments is applicable to any law mandating the use of such notice requirements, e.g., CWA, RCRA, the Endangered Species Act, etc.

that it will know what corrective actions would avert a lawsuit." Nat'l Resources Defense Council v. Southwest Marine, Inc., 236 F.3d 985, 996 (9th Cir. 2000) (*quoting* Atlantic States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 819 (7th Cir. 1997)); *see also* Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 521-22 (9th Cir. 1998) (dismissing action because notice did not inform defendant of one of the violations alleged in the complaint so defendant was wrongfully deprived of the opportunity to identify and attempt to abate the violation). The notice letter must be "reasonably specific as to the nature and time of the alleged violations." San Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153, 1155 (9th Cir. 2002). In addition, it must provide enough information so that the defendant can identify and correct the problem. Id.[4]

As discussed in more detail below, River Watch's CWA Notice fails to provide Redwood with even the "reasonably specific" information required to identify the alleged problem and thus deprived Redwood of its opportunity to correct it and avoid this action, assuming a problem even exists. Consequently, this action must be dismissed for lack of subject matter jurisdiction.

1.   **River Watch's Clean Water Act Notice Is Legally And Factually Inadequate.**

In Plaintiff's CWA Notice, it alleges that Redwood (1) violated the terms of the General Industrial Storm Water Permit; and (2) discharged pollutants in the absence of a National Pollution Discharge Elimination System ("NPDES") Permit. CWA Notice at 5-6. As discussed below, Plaintiff's CWA Notice of these alleged violations is both legally and factually inadequate, and thus, does not allow Redwood to identify and remedy the alleged violations, if any even exist.

///
///
///

---

[4] Although the BayKeeper court found that the notice provisions and their enforcing regulations require no more than "reasonable specificity," that court reiterated that "[t]he key language in the notice regulations is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." BayKeeper, 309 F.3d at 1158. As demonstrated below, River Watch's notice fails to meet that standard.

a.  **Plaintiff's Notice That Redwood Violated Terms Of Its General Stormwater Permit Does Not Provide Redwood With The Required Information To Allow Redwood To Identify And Correct The Alleged Problem.**

River Watch's CWA Notice alleges that Redwood violated the terms of its General Storm Water Permit by (a) allowing various discharges from its facilities, (b) not fully developing or implementing a Storm Water Pollution Prevention Plan ("SWPPP") or Monitoring Program for its operations, and, (c) failing to utilize best management practices ("BMP").[5] As discussed in detail below, these allegations do not provide Redwood with sufficient information to identify and correct the alleged violations.

i.  **Plaintiff's Notice That Redwood Allegedly Discharges Storm Water Containing Pollutants and Non-Storm Water Pollutants Does Not Provide The Required Information To Allow Redwood To Identify And Correct The Alleged Problems.**

Plaintiff generally alleges that Redwood violated the General Permit by:

- *The alleged failure of the Landfill's leachate collection and removal system ("LCRS") to prevent "releases of leachate" from the site.* CWA Notice at 3. It is not clear whether River Watch is claiming this failure of the LCRS to be a separate and distinct violation of the General Permit, or only the resultant leachate releases. Additionally, the term "leachate" is used to generally describe liquid emanating from a landfill, and can contain a wide variety of substances that could be deemed a pollutant under the CWA. Finally, no specific factual information, dates or time periods were provided regarding these alleged releases;

- *Failing to eliminate non-storm water discharges from its operations.* CWA Notice at 5. This allegation is supported only by the vague example that "total suspended solids and specific conductivity in the stormwater exceed EPA benchjmarks (sic)."[6] Id.;

- *Allowing materials other than storm water to discharge either directly or indirectly into waters of the United States.* Id. These "materials" include

---

[5] The General Permit states that one objective of the SWPPP is "to identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-storm water discharges. BMPs may include a variety of pollution prevention measures or other low-cost and pollution control measures. They are generally categorized as non-structural BMPs (activity schedules, prohibitions of practices, maintenance procedures, and other low-cost measures) and as structural BMPs (treatment measures, run-off controls, cover-head coverage)." State Water Board Water Quality Order No. 97-03-DWQ NPDES General Permit No. CAS 000001 (referenced in Plaintiff's CWA Notice) ("General Permit") at 11.

[6] It bears mention that even if this general reference to "EPA benchmarks" was sufficiently specific to satisfy the CWA's notice requirements, the exceedance of such benchmarks is not a violation of a "standard or limitation" under CWA section 505(a)(1). *See* Fed. Reg. at 64816 (Oct. 30, 2000).

       unspecified types and amounts of "metals, solvents, organics, toxins and nutrients including nitrogen, phosphate and ammonia." Id.;

- *Causing or threatening to cause pollution, contamination or nuisance through the alleged discharges from the Landfill.* Id. Again, no information was provided as to the dates or time periods of these alleged discharges, or any other specific or even "reasonably specific" facts; and

- *Discharging storm water and non-storm water to surface or ground water which adversely impacts human health or the environment.* Id. Here again, nothing more than this generalized claim is provided.

In addition, Plaintiff alleges that Redwood discharged storm water containing pollutants and non-storm water pollutants from its landfill site into adjacent wetlands, San Antonio Creek and/or their tributaries during at least every rain event over 1 inch as measured by the National Oceanographic and Atmospheric Administration. Id. at 5. Plaintiff further alleges that these violations are ongoing. Id. Plaintiff also alleges that Redwood's own self monitoring reports show that the groundwater in the area of these sites contains hazardous constituents exceeding California's Minimum Contaminant Levels and historic background limits, including ammonia, iron, acetone and carbon disulfide. Id. at 4.

River Watch's generalized CWA Notice regarding discharges from the Landfill is inadequate because it does not identify:

(1) The locations of the alleged violations, either the area within the 600-acre Landfill site from which the discharge originated (*e.g.*, from three of the storm water outfalls along the Landfill's western boundary), or the area of the water body to which the discharge occurred (the area of the San Antonio Creek where it empties into the Petaluma River);

(2) The particular pollutants alleged to have been discharged from the Landfill, except through the use of broad, vague categories, such as "metals," "solvents" and "toxins," and incomplete lists, such as "nutrients *including* nitrogen, phosphate and ammonia" (emphasis added);

(3) The activity alleged to constitute a violation, *e.g.*, filling, compacting, installing cover, cleaning equipment, etc.;

(4) The specific standard, limitation or order alleged to have been violated, *e.g.*, the effluent standards for specific pollutants, specific permit conditions, or specific sections of the Landfill's Waste Discharge Order; and

     (5)    The date or dates of such alleged violations, or a even reasonable range of dates during which the alleged activities occurred.

Moreover, the CWA Notice does not connect any of the details of the alleged violations occurring at the Landfill together. For instance, there is no way to know whether a particular pollutant is being discharged to all surrounding water bodies or just to the slough to the west of the Landfill site. Such information might reveal the source of that pollutant at the Landfill or the manner in which it is being discharged, *e.g.*, surface run-off or groundwater flow. Another example is the absence of a link between particular pollutant discharges to reasonable date ranges. Such information might identify a particular operation conducted at the Landfill for a limited time period as the likely source of the problem. Instead, the CWA Notice sets forth a hodge-podge of unspecific information and provides little if any clear inclination of how any of that information relates to each other. The CWA Notice provides a partial listing of allegedly impacted water bodies, uses broad, vague categories ("metals") or partial listings of pollutants ("nutrients *including* nitrogen, phosphate and ammonia"), discusses both surface water and groundwater, and contains discussions that do not clearly identify the specific issues that River Watch claims are CWA violations (referring to Redwood's alleged practice of explaining away test results instead of properly reporting them to the, River Watch states: ". . . begging the question when would Redwood recognize a resampling result confirming a statistically significant exceedance of a [Water Quality Parameter] as an indication of a leachate release from the landfill?"). CWA Notice at 4 (emphasis added).

Such information is critical to satisfy the "reasonably specific" standard articulated in BayKeeper, which in turn serves the CWA's purpose of informing the alleged violator of its exact offending conduct so it can remedy that conduct and avoid a lawsuit. Merely stating that storm water has been discharged without dates, locations, pollutants, etc. is not enough. Nor is writing a notice letter containing references to numerous water bodies, pollutant categories, and various standards, regulations and orders without linking them together in a cogent, logical manner. And neither is speculating as to the conditions that Redwood might report a particular test result to the Regional Water Quality Control Board or the effectiveness of the Landfill's leachate collection and

1  removal system. That is why the Ninth Circuit has repeatedly interpreted the CWA's notice
2  provisions to require much greater specificity.
3        For example, in <u>California Sportfishing</u>, plaintiff's notice of alleged discharges stated, "the
4  California Regional Water Quality Control Board notified you of chlorine violations, non-reporting,
5  that bioassay samples were 'scrubbed,' that coliform organisms exceeded the effluent limitation, and
6  that solid waste were observed over the Sacramento River Bank." <u>California Sportfishing Protection
7  Alliance v. City of West Sacramento</u>, 905 F.Supp. 792, 796 (EDCA Oct. 24, 1995). The court found
8  that this notice did "not suffice because there is no time given as to the violation, it is not clear in
9  some instances what the violation is – e.g. 'non-reporting' of what? – and it is not clear whether
10 [plaintiff] makes or adopts [the Water Board's] allegations." <u>Id.</u> at 800. In addition, the notice
11 states, "For the previous five years on hundreds of occasions you have violated your NPDES permit.
12 Further, you have consistently misreported and/or failed to report the results of your testings." <u>Id.</u>
13 The court found that this portion of the notice was insufficient because "it is vague as to which
14 portions of the permit have been violated and which test results were not reported or were
15 misreported" and there is no sufficient notice of the date or dates on which the violations are alleged
16 to have occurred." <u>Id.</u> The court stated, "[T]he date or dates of the violation must be stated with
17 some specificity. Ideally plaintiff will identify the precise date. But at the least plaintiff should give
18 a range as to date that is reasonably limited." <u>Id.</u> at 799. Thus, the court dismissed the plaintiff's
19 allegations for lack of jurisdiction. <u>Id.</u> at 800.
20       By contrast, in <u>BayKeeper</u>, the plaintiff alleged that Tosco allowed illegal discharges of
21 petroleum coke to enter the New York Slough by storing petroleum coke in large uncovered piles
22 allowing the coke to be carried into the slough by wind and rain, and that careless loading
23 procedures also resulted in spillage into the slough. <u>BayKeeper</u>, 309 F.3d at 1156. Plaintiff claimed
24 that rain came into contact with uncovered coke piles and then carried contaminants directly into the
25 slough, or into the storm drain system which flowed into the slough. <u>Id.</u> Unlike River Watch,
26 BayKeeper provided a list of 190 dates between 1994 and 1999 when the San Francisco Bay area
27 received more than one-tenth of an inch of rain. <u>Id.</u> In addition, the <u>BayKeeper</u> plaintiff alleged that
28 petroleum coke spilled into the water on each day of ship loading and listed fourteen dates when the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ships were docked. Id. at 1158-59.[7] Here, River Watch has provided no dates or even a reasonable date range.[8] BayKeeper also alleged that petroleum coke was blown by the wind into the water from uncovered piles on "each day when the wind has been sufficiently strong to blow coke from the piles into the slough." The court held that this more specific notice was sufficient, which identified the problem of uncovered piles and the effect of a strong wind, because it clearly identified the alleged violation and was specific enough to give Tosco an opportunity to correct the problem because it could cover or enclose the petroleum coke piles. Id. By contrast, River Watch has not identified any specific sources of contamination, landfill management practices or pollutants that would provide Redwood with similarly sufficient information to identify and correct the alleged problem.

In another Ninth Circuit case, the plaintiff alleged, *inter alia*: "Illegal discharges occurred on at least the following [twelve] dates: 1/22/92 liquid manure discharge into irrigation ditch; 3/26/93 manure discharge into agricultural return drain; 3/31/93 manure wastewater discharge to SVID 26.6. . . ." Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 951 (9th Cir. 2002). In addition, the Bosma Dairy court noted that there was only one drainage ditch that the manure could run into on defendant's property. Id. at 952. Based on these facts, the court found the notice of alleged violations provided sufficient detail to allow defendant to identify the violations and attempt to remedy them. Id.

In Waterkeepers Northern California v. AG Industrial Manuf. Inc., 375 F.3d 913 (9th Cir. 2004), the court addressed another situation in which the plaintiff failed to provide notice of the specific dates that areas of the site or machinery were washed down, resulting in contaminants

---

[7] Though the BayKeeper plaintiff did not provide an exhaustive list of the specific dates when ships were docked at Tosco's facility and during which discharges allegedly occurred, the court held that its 60-day notice was sufficient because Tosco could determine for itself the dates of shipping activity at its facility. Quoting from another Ninth Circuit case, the BayKeeper court noted that plaintiff's notice was sufficient for the violations without dates because those additional violations were "from the same source, were of the same nature, and were easily identifiable." Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 951 (9th Cir. 2002).

[8] River Watch merely alleges that the point source discharges occurred from February 6, 2002 through February 6, 2007 – a five-year time span. CWA Notice at 6. Moreover, River Watch provides no date information whatsoever for the non-point source discharges.

1  entering the storm sewer. Id. at 919. Despite the fact that plaintiff's notice letter contained no dates,
2  the court found that it met the CWA notice requirement because, similar to BayKeeper and Bosma
3  Dairy, sufficient information was provided about the nature and source of the violations, including
4  the pollutants involved, to ". . . permit the recipients to identify . . . the date or dates" of alleged
5  violations, and to allow the alleged polluter an "opportunity to correct the problem." Id. at 919-20.
6      Finally, in Northern California River Watch v. Lake County Sanitation Dist., 2004 WL
7  3154580 (NDCA Sept. 2, 2004), Judge Jenkins upheld River Watch's CWA notice letter, but only
8  because: (a) River Watch's 60-day notice cited records that "contain specific information regarding
9  the location, cause, volume, directional flow and clean up measures employed for collection system
10 and storage reservoir overflows" (Id. at 4); (b) River Watch's allegations are the discharges from
11 particular pipes on particular days, which are discrete and not ongoing" (Id. at 5); (c) River Watch's
12 notice provided two specifications of the alleged violations, listing both the violation types
13 ("collection system stoppages and overflows, storage reservoir overflows, and storage pond
14 overflows") and documents identifying those violations to which Lake County Sanitation had access
15 (Id. at 4); (d) River Watch adequately noticed Lake County Sanitation of the dates and the locations
16 of the alleged violations (Id. at 5); and (e) Despite the fact that "River Watch does not successfully
17 distinguish its 60-day notice from that in California Sportfishing" with respect to the broad date
18 range alleged, the notice in Lake County Sanitation was sufficient because it provided additional
19 timing and location information, rainfall data enabling Lake County Sanitation to determine the
20 violation dates (similar to the dates of ship docking in BayKeeper), identified discharge sources and
21 cited more detailed records available to Lake County Sanitation (Id.). Importantly, however, based
22 on these facts, the court determined that River Watch's notice "*just barely* contained the specificity
23 annunciated in BayKeeper." Id. at 5 (emphasis added).
24     By contrast, unlike BayKeeper, Bosma Dairy, Waterkeepers or Lake County Sanitation,
25 River Watch's CWA Notice in this case does not give Redwood any specific information about
26 where the alleged discharges are taking place, how they are occurring (*i.e.* the type of discharge), or
27 when they occurred. For example, the Landfill property contains 32 designated locations for storm
28 water discharges. At which of these locations does River Watch allege the unauthorized discharges

are taking place? Or at what approximate location(s) at the 600-acre Landfill property are the allegedly illegal discharges occurring? Which of the specific activities conducted at the Landfill cause the discharges that violate the CWA? Furthermore, Plaintiff's CWA Notice does not identify the specific standard, limitation or order alleged to have been violated. Which standard, limitation or order have the alleged discharges exceeded?

In addition, River Watch does not allege the dates, or at the very least a narrow range of dates, of the alleged discharges. Instead, River Watch merely alleges that the point source discharges occurred from February 6, 2002 through February 6, 2007 – a five-year time span. CWA Notice at 6. Even worse, River Watch provides no date information whatsoever for the non-point source discharges. River Watch also claims these discharges are ongoing and occur during at least every rain event over 1 inch as measured by the National Oceanographic and Atmospheric Administration.[9] Id. at 5. However, unlike in BayKeeper, where the plaintiff listed 190 rain dates, or in Bosma Dairy where the plaintiff also listed specific dates, River Watch does not even attempt to offer a partial listing of the violation dates. And unlike in Waterkeepers and Lake County Sanitation, River Watch does not identify all of the pollutants allegedly discharged from the Landfill, uses broad, vague categories to describe many of those pollutants, fails to identify the sources and the nature of the discharges, and fails to identify any measures that could be used to eliminate the alleged discharges. All of this information enabled the defendants in the Waterkeepers and Lake County Sanitation cases to identify the problems with enough specificity to allow them to remedy the problems at issue.

In short, River Watch's CWA Notice does not allege any information with the requisite reasonable specificity that would allow Redwood to identify the alleged problem and attempt to correct it. Therefore, BayKeeper's "reasonably specific" standard for providing notice under the CWA has not been satisfied here. The lack of specificity and clarity of the CWA Notice here makes this case very similar to the California Sportfishing case discussed above, in which the plaintiff's 60-

---

[9] River Watch's CWA Notice also offers the following vague statement: "*Occasionally*, the sloughs overflow due to heavy rains or tidal peaks resulting in widespread, shallow flooding of the marshlands located east of the site." Id. at 2 (emphasis added).

day notice letter was deemed to be inadequate. As in <u>California Sportfishing</u>, the CWA Notice's lack of specificity is fatal to asserting subject matter jurisdiction over River Watch's CWA claims.

        ii.      **Plaintiff's Notice That Redwood Did Not Develop or Adequately Implement Its Storm Water Pollution Prevention Plan or Monitoring Program Does Not Provide Redwood With The Required Information To Allow Redwood To Identify And Correct The Alleged Problem.**

In the CWA Notice, River Watch alleges that Redwood has not developed or adequately implemented a SWPPP or a Monitoring Program for its facilities. <u>Id</u>. In addition, River Watch alleges that Redwood failed to develop and implement a SWPPP or Monitoring Program that complies with the General Permit's requirement that "best management practices" be used. <u>Id</u>. River Watch also alleges that although "there are a number of confirmed, statistically significant exceedances of a [Water Quality Parameter] in Redwood's groundwater monitoring reports, Redwood has always opted to offer some excuse rather than complying with the protocol for reporting a violation" specified in Redwood's Monitoring Program. <u>Id</u>. at 4.

These allegations completely fail to give notice to Redwood of the specific standard, limitation or order allegedly violated, or the activity alleged to constitute a violation as required by the regulations. <u>See</u> 40 C.F.R. § 135.3(a) (1973). As an example of how to provide proper notice, the Ninth Circuit in <u>Southwest Marine</u> concluded that the plaintiff provided adequate notice of the defendant's alleged failure to develop and implement a SWPPP by identifying the specific provisions of the General Permit that the defendant allegedly violated and explaining how the defendant's actions were deficient. <u>Southwest Marine</u>, 236 F.3d at 996, 1007 (notice letter provided in appendix to the court's opinion). Specifically, the Ninth Circuit stated:

> The letter charged, among other things, that Defendant failed to prepare an SWPPP that complied with the specific requirements of Defendant's storm water permit; it identified the source of the requirement that Defendant prepare an adequate SWPPP; and explained the ways in which Defendant's then-existing SWPPP did not comply with the storm water permit.

<u>Southwest Marine</u>, 236 F.3d at 996.

River Watch's general notice of an allegedly deficient SWPPP and Monitoring Program does not rise to this level. Redwood's General Permit includes specific and detailed requirements for a SWPPP and a Monitoring Program. Despite River Watch's access to the General Permit, River Watch fails to (a) state which sections of the General Permit it alleges are not included in the SWPPP and Monitoring Program, (b) state which sections of the General Permit it alleges Redwood did not comply with in its SWPPP or Monitoring Program, or (c) describe the "confirmed, statistically significant exceedances of a [Water Quality Parameter] in Redwood's groundwater monitoring reports" that Redwood improperly failed to report. Accordingly, a boilerplate allegation that Redwood has not developed, adequately implemented or properly adhered to a SWPPP or Monitoring Program for its facilities prevents Redwood from identifying which specific sections of the General Permit it failed to comply with, as alleged by River Watch.

Further, River Watch fails to describe the activity(ies) alleged to constitute a violation. For example, how has Redwood failed to develop a SWPPP and Monitoring Program for its facilities as River Watch alleges? How has it not "adequately implemented" the SWPPP and Monitoring Program for its facilities? Under section 308(b) of the CWA, Plaintiff has access to Redwood's SWPPP, but still failed to include specific information about how it is deficient. Similarly, River Watch fails to enumerate which substances have exceeded a Water Quality Parameter in a groundwater monitoring report that Redwood neglected to report? And which monitoring reports are being referred to – just the three actually referenced in the CWA Notice, or others also?

Without additional information specifying sections of the SWPPP and Monitoring Program that River Watch alleges are inadequate, have not been adequately implemented or what Redwood needs to do to correct them, Redwood cannot discern how to address River Watch's concerns or remedy the violations. Instead, by providing a factually vague CWA Notice, Plaintiff has turned the CWA's notice provisions, intended to provide precise information, into a guessing game. Consequently, Plaintiff's CWA Notice regarding Redwood's general failure to develop or adequately implement a SWPPP and Monitoring Program is legally deficient and subject matter jurisdiction does not attach to those claims.

      b.      **Plaintiff's Notice That Redwood Discharges Pollutants In the Absence of a NPDES Permit Does Not Provide Redwood With The Required Information To Allow Redwood To Identify And Correct The Alleged Problem.**

River Watch alleges that the Landfill "is itself a point source [from which discharges occur] via tributary ground waters to San Antonio Creek, the Petaluma River and adjacent wetlands" without a NPDES permit. CWA Notice at 6. River Watch's notice of this alleged violation of the CWA fails to identify either the locations or dates of these alleged discharges.

Instead, River Watch merely states that "[d]ue to the hydrological connection between the waste disposal site and waters of the United States, point source discharges occur every day, as evidenced by the groundwater monitoring results referenced above." Id. River Watch fails to state where, even generally, the discharges of pollutants originate in or exit from the Landfill. As discussed above, Redwood uses approximately 400 acres of the 600-plus acre Landfill property for disposal activities and there are 32 storm water drainage points on the property. Without reasonably specific information from River Watch regarding where the alleged unauthorized discharges originate or exit from the Landfill property, Redwood cannot possibly identify or correct the alleged violations. Additionally, River Watch generically identifies "intermittent drainages, wetlands, sloughs, . . . San Antonio Creek" and "adjacent wetlands" as those water bodies allegedly impacted by discharges from the Landfill. Finally, River Watch fails to specify any reasonable date range for the alleged discharges or the number of occurrences. Instead, it says they occurred in the five-year period from February 6, 2002 through February 6, 2007 and that it believes they are ongoing. CWA Notice at 6. This lack of reasonable specificity is fatal to establishing subject matter jurisdiction over Plaintiff's CWA claims.

## V

## CONCLUSION

The notice requirements under the CWA were not intended to be a meaningless formality or guessing game. In fact, it is just the opposite. The law requires notification with reasonable specificity sufficient to give the alleged wrongdoer a reasonable opportunity to fix the problem. River Watch did not satisfy this requirement. Consequently, its CWA Notice is legally defective.

1  Because River Watch failed to strictly comply with the CWA notice requirements as mandated by
2  the United States Supreme Court and the Ninth Circuit, its claims must be dismissed for lack of
3  subject matter jurisdiction.

5  DATED: November 14, 2007

6  REED SMITH LLP

8  By _____
   John Lynn Smith
9  Eric M. McLaughlin
   Attorneys for REDWOOD LANDFILL, INC.