1   John Lynn Smith (SBN 154657)
    (E-Mail: jlsmith@reedsmith.com)
2   Eric M. McLaughlin (SBN 200867)
    (E-Mail: emclaughlin@reedsmith.com)
3   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
4   San Francisco, CA  94111-3922

5   **Mailing Address:**
    P.O. Box 7936
6   San Francisco, CA  94120-7936

7   Telephone:    (415) 543-8700
    Facsimile:    (415) 391-8269
8
    Attorneys for REDWOOD LANDFILL, INC.
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  NORTHERN CALIFORNIA RIVER WATCH, a        No.: C-07-5058 WHA
    non-profit Corporation,
13                                            **DEFENDANT REDWOOD LANDFILL,**
                    Plaintiff,                **INC.'S REQUEST FOR JUDICIAL**
14                                            **NOTICE**
        vs.
15                                            **(Fed. R. Evid. 201)**

16  WASTE MANAGEMENT INC., REDWOOD            Date:         December 20, 2007
    LANDFILL INC. and DOES 1-10, inclusive,   Time:         8:00 a.m.
17                                            Place:        Courtroom 9, 19th Floor
                    Defendants.               Compl. Filed: October 1, 2007
18                                            Trial Date:   None Set

19                                            Honorable William Alsup

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Pursuant to Federal Rule of Evidence 201, Defendant Redwood Landfill, Inc. hereby requests

2  that the Court take judicial notice of the following:

3

4    1.    The complaint filed in September 2003 by Plaintiff River Watch against Redwood

5  Landfill, Inc. (USDC NDCA Case No. C-03-3991 EMC).  The complaint in that action, and the two

6  60-day notice letters attached thereto as Exhibits A and B, are attached hereto as <u>Exhibit A</u>.

7

8    DATED:  November **14**, 2007

9                                      REED SMITH LLP

10

11                            By_____

12                                      John Lynn Smith
                                         Eric M. McLaughlin
                                         Attorneys for REDWOOD LANDFILL, INC.

DEFENDANT REDWOOD LANDFILL, INC.'S REQUEST FOR JUDICIAL NOTICE

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# EXHIBIT  A

1  Jack Silver, Esq. SB #160575
2  Kimberly Burr, Esq. SB #193805
   Northern California Environmental Defense Center
3  902 Stevenson Street
   Santa Rosa, CA 95404
4  Tel. 707-527-8811
   Fax. 707-527-5443

5  Attorneys for Plaintiff:
6  NORTHERN CALIFORNIA RIVER WATCH

ORIGINAL
FILED
SEP - 2 2003
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
E-filing

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

EMC

10                                         C 03     3991

11  NORTHERN   CALIFORNIA   RIVER     CASE NO:
    WATCH, a non-profit Corporation,
12                                         COMPLAINT FOR INJUNCTIVE
              Plaintiff,                    RELIEF, CIVIL PENALTIES,
13            v.                            RESTITUTION, AND REMEDIATION
                                           (Environmental - Clean Water Act, 33 U.S.C.
14  WASTE MANAGEMENT, INC.;                § 1251 et seq.; Resource Conservation
    REDWOOD LANDFILL, INC.; REDWOOD        Recovery Act, 42 U.S.C. § 6901 et seq.;
15  SANITARY LANDFILL; REDWOOD             Calif. Bus. & Prof. Code § 17200 et seq.)
    LANDFILL BIO-SOLIDS CO-
16  COMPOSTINGS; and DOES 1-10,
    INCLUSIVE,
17
              Defendants.
18  _____/    _____

19

20

21

22  1.     NOW COMES PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH (hereafter,

23  "PLAINTIFF") by and through its attorneys, and for its Complaint against defendant, WASTE

24  MANAGEMENT,    INC.,   REDWOOD    LANDFILL,    INC.,   REDWOOD   SANITARY

25  LANDFILL, REDWOOD LANDFILL BIO-SOLIDS CO-COMPOSTINGS, and DOES 1-10,

26  INCLUSIVE, (hereafter, "REDWOOD") states as follows:

27  //

28  //

Complaint for Injunctive Relief                 1

# NATURE OF THE CASE

2.     This is a citizen suit for relief brought by PLAINTIFF under the Federal Water Pollution Control Act, also known as the Clean Water Act (hereafter, "CWA"), 33 U.S.C. § 1251 et seq., specifically Section 505, 33 U.S.C. § 1365 and Section 301, 33 U.S.C. § 1311; Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. (hereafter, "RCRA"); and California's Unfair Competition Act, California Business & Professions Code § 17200, et seq. to stop REDWOOD from repeated and ongoing violations of the CWA, RCRA, and California state law.  These violations are detailed in the May 13, 2003 and June 30, 2003 Notices of Violations and Intent To File Suit (hereafter "NOTICES") provided to REDWOOD by PLAINTIFF, made a part of the pleadings of this case and attached hereto as EXHIBIT A and EXHIBIT B.   PLAINTIFF seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for REDWOOD's violations of the CWA, RCRA, and Business & Professions Code § 17200 et seq.

3.     PLAINTIFF contends REDWOOD illegally discharges to wetlands in and around REDWOOD's facilities, the Petaluma River, San Pablo Bay, San Antonio Creek, Mud Slough, West Slough, their tributaries, and/or hydrologically connected water bodies which drain to the San Francisco Bay.

4.     PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California, with headquarters located in Occidental, California.  PLAINTIFF is dedicated to protect, enhance and help restore the surface and subsurface waters of Northern California.   Many of PLAINTIFF's members live in northern California including Sonoma and Marin Counties. PLAINTIFF is organized under the laws of the State of California, with its main office at 74 Main Street, Suite D., Post Office Box 1360, Occidental, CA, 95465.  Its telephone number is 707-874-2579.

5.     PLAINTIFF is informed and believes and on such information and belief contends that Defendant WASTE MANAGEMENT INC. is a corporation with a mailing address of 3003 Butterfield Road, Oak Brook, IL 60521.

6.     PLAINTIFF is informed and believes and on such information and belief contends that Defendant REDWOOD LANDFILL, INC. is a corporation with registered offices at 8950 Redwood Highway North, Novato, CA 94945.

7.     PLAINTIFF is informed and believes and on such information and belief contends that Defendant REDWOOD SANITORY LANDFILL is a d.b.a. of REDWOOD LANDFILL, INC.

8.     PLAINTIFF is informed and believes and on such information and belief contends that Defendant REDWOOD LANDFILL BIO-SOLIDS CO-COMPOSTINGS is believed to be a d.b.a. of REDWOOD LANDFILL, INC.

9.     DEFENDANTS named herein as DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations and entities, who are, or were, responsible for, or in some way contributed to, the violations which are the subject of this Complaint or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of REDWOOD's facilities and operations as further described in this Complaint.   The names, identities, capacities, and functions of Defendants DOES 1 - 10, Inclusive are presently unknown to PLAINTIFF.   PLAINTIFF  shall seek leave of court to amend this Complaint to insert the true names of said DOE Defendants when the same have been ascertained.

## JURISDICTIONAL ALLEGATIONS

10.     Subject matter jurisdiction is conferred upon this Court by Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), which states in part that, "any citizen may commence a civil action on his own behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."  For purposes of Section 505, "the term 'citizen' means a person or persons having an interest which is or may be adversely affected."

11.     Subject matter jurisdiction is further conferred upon this court by  RCRA § 7002(a) & (b), 42 U.S.C. § 6972 (a) & (b) and 28 U.S.C. § 1221.

//

//

Complaint for Injunctive Relief                    3

12.    This Court has supplemental jurisdiction over all State based causes of action in this Complaint pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the Federal causes of action.

13.    Members and supporters of PLAINTIFF reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the San Pablo Bay, San Francisco Bay, Petaluma River, San Antonio Creek, and the wetlands in which the REDWOOD facilities are sited as well as the associated natural resources into which REDWOOD discharges pollution, or by which REDWOOD's operations adversely affect those members interests, in violation of the CWA, RCRA, and Business & Professions Code § 17200. The health, economic, recreational, aesthetic and environmental interests of PLAINTIFF and its members may be, have been, are being, and will continue to be adversely affected by REDWOOD's unlawful violations of the CWA. PLAINTIFF contends there exists an injury in fact to its members, causation of that injury by the conduct of REDWOOD complained of herein, and a likelihood that the requested relief will redress that injury.

14.    Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C.§1365(b)(1)(A), PLAINTIFF gave notice of the violations alleged in this Complaint on May 13, 2003, more than sixty (60) days prior to commencement of this lawsuit, to: (a) REDWOOD, (b) the United States Environmental Protection Agency (both Federal and local), and (c) the State of California Water Resources Control Board. A true and correct copy of the notice letter is attached hereto as EXHIBIT A and incorporated fully into this Complaint.

15.    Pursuant to CWA § 505(c)(1) 33 U.S.C. § 1365(c)(1), venue lies in this District as the operations and facilities of REDWOOD which are the sources of the violations complained of in this lawsuit, are located within this District.

16.    On June 30, 2003, PLAINTIFF provided notice of REDWOOD's violations of RCRA and of its intent to file suit against REDWOOD, to the Administrator of the United States Environmental Protection Agency, the Administrator of the Environmental Protection Agency Region 9, the Executive Director of the State Water Resources Control Board, the Executive

Complaint for Injunctive Relief                    4

1    Director of the California Integrated Waste Management Board, and REDWOOD as required

2    by the RCRA. A true and correct copy of the notice letter is attached hereto as EXHIBIT B

3    and incorporated fully into this Complaint.

4    17.    The RCRA venue lies in this District as the operations and facilities of REDWOOD

5    which are the sources of the violations complained of in this lawsuit, are located within this

6    District.

7    18.    This Complaint is being filed more than sixty (60) days after PLAINTIFF gave notice

8    of violations alleged in the NOTICES.

9                            **INTRADISTRICT ASSIGNMENT**

10    19.    The basis for assignment of this action to the Northern District of California, pursuant

11    to 33 U.S.C. § 1365(c)(1) and 42 U.S.C. § 6972 (a) & (b) is that REDWOOD's facilities are

12    located in this District and the sites of pollution are located in the Northern District as well.

13                            **STATEMENT OF FACTS**

14    20.    Arsenic, barium, benzene, chlorobenzene, chromium, MtBE, napthalene, toluene,

15    acetone, 1,2-EDB, 2-butanone, 1,4-dichlorobenzene, 4-methyl-2-pentanone, 1,2,4,5-

16    tetrachlorobenzene, carbon disulfide, methyl isobutyl ketone, methylene chloride, ammonia,

17    and cyanide are just some of the hazardous constituents detected in ground water and leachate

18    at REDWOOD's Novato site.    Heavy metals, volatile organic compounds, and high

19    concentrations of constituents such as ammonia, chloride, and total dissolved solids are

20    routinely detected in the groundwater beneath the site.    The Southern area has been filled with

21    refuse to a depth of ten to thirty feet.    Groundwater levels in many areas are less than four feet.

22    The property is largely unlined. REDWOOD's facility is underlain by Holocene Bay Muds

23    that are "… likely preferential groundwater flow pathways." (REDWOOD's WDR Permit

24    Order 95-110p.6).    The leachate pond is unlined and relies upon Bay Muds to contain

25    contaminated leachate.    Leachate migrates downwards and laterally following the gradient

26    toward the creeks and rivers.    The landfill, composting, sludge storage, disposal, and

27    processing sites which REDWOOD owns and operates sit in a wetland.    The Petaluma River

28    //

1  is now listed as impaired under § 303(d) of the CWA. Beneficial uses of San Antonio Creek

2  and Mud Slough bordering REDWOOD are estuarine and wildlife habitat.

3  21.    REDWOOD continues to accept enormous amounts of refuse, sewer sludge, municipal

4  wastewater, dead animals, petroleum contaminated soils, treated wood, grease, incinerator ash,

5  asbestos, etc. In the year 2002, 400,000 tons of sewer sludge and other refuse was accepted at

6  the landfill site. In addition, REDWOOD has expanded beyond its permit, allowed substantial

7  unpermitted traffic to tip loads at the site, (Environmental Health Notice and Order and

8  Stipulated Notice and Order - June 2002) and seeks to further expand its operations in the

9  sensitive wetlands in which it is now located.

10                              **GENERAL ALLEGATIONS**

11  22.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1

12  through 21 as though fully set forth herein including all allegations in the NOTICES attached

13  hereto and incorporated herein by reference.

14  23.    REDWOOD owns and/or operates landfill, sludge treatment and disposal, and compost

15  facilities located near the City of Novato in Marin County, California.    REDWOOD's

16  facilities provide disposal services for the County of Marin and the facilities accept sludge

17  waste from out of county. REDWOOD's facilities discharge both directly and indirectly into

18  the waterways adjacent to and downstream of the facilities and into ground water.

19  24.    All illegal discharges and activities complained of in this Complaint occur in the

20  wetlands, and/or hydrologically connected water bodies to the REDWOOD facilities,

21  including the San Pablo Bay San Francisco Bay, the Petaluma River, San Antonio Creek, Mud

22  Slough, and West Slough all of which are waters of the United States.

23  25.    REDWOOD's operations involve the disposal and storage of hazardous wastes. These

24  wastes are improperly released into the environment, surface water, and groundwater thus

25  posing an imminent risk to human health and the environment. The Regional Water Quality

26  Control Board, S.F Bay Region (hereafter, "RWQCB") has determined that the watershed area

27  and affected waterways are beneficially used for estuarine and wildlife habitat, drinking water,

28  water contact recreation, non-contact water recreation, fresh water habitat, salt water habitat,

1  preservation of rare and endangered species, fish migration, fish spawning, industrial service
2  supply, navigation, and sport fishing.

3  ## STATUTORY AND REGULATORY BACKGROUND

4  26.    CWA § 301(a):  The CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants
5  from a point source into navigable waters of the United States without a National Pollution
6  Discharge Elimination System (hereafter, "NPDES") Permit. The effected waterways detailed
7  in this Complaint and in the NOTICES are navigable waters of the United States within the
8  meaning of Section 502(7) of the CWA, 33 U.S.C. §1362(7).

9  27.    CWA § 402:   The Administrator of the Environmental Protection Agency has
10 authorized the RWQCB to issue NPDES permits, subject to specified conditions and
11 requirements, pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  Two types of NPDES
12 permits are implicated in this case, a 402(a) NPDES permit for discharging from a point
13 source to waters of the United States and a storm water NPDES permit for discharging storm
14 water and non-point source pollution from a facility.

15 28.    CWA § 404:  The Clean Water Act § 404 requires that prior to discharging into or
16 filling a wetland, a permit must be obtained.

17 29.    RCRA § 6972 (a)(1)(A):  RCRA § 7002(a), 42 U.S.C. § 6972 a(1)(A) provides that any
18 person may commence a civil action against any person or entity who is alleged to be in
19 violation of any permit, standard, regulation, condition, requirement prohibition, or order
20 which has become effective pursuant to RCRA.

21 30.    RCRA § 6972 (a)(1)B):  RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972 (a)(1)(B)  provides
22 that any person may commence a civil action against any person or entity including a past or
23 present generator, transporter, owner or operator of a treatment, storage or disposal facility
24 who has contributed to the pollution by a hazardous waste which may present an imminent and
25 substantial endangerment to health or the environment.

26 31.    Calif. Business & Professions Code § 17200:  REDWOOD has engaged in an unlawful
27 business practice which constitutes unfair competition within the meaning of Business &
28 Professions Code § 17200 by violating the aforementioned statutes, laws and ordinances.

1          **VIOLATIONS OF REDWOOD**

2     32.    The discharges of REDWOOD from its facilities are in violation of the provisions of

3     RCRA and the CWA.   Those violations are continuing.   The enumerated violations are

4     detailed in the NOTICES, incorporated herein by reference, and below.

5     33.    The types of violations are described with particularity in the NOTICES, inspection

6     reports of agencies, self monitoring reports, and correspondence of the lead agency, Marin

7     County Health  and the RWQCB.

8     34.    The location of the discharges are the discharge points as described in the Waste

9     Discharge Requirements and other documents incorporated herein by reference, from ponds,

10    and from subsurface migration and release.

11          **CLAIMS FOR RELIEF**

12    **A.     First Claim for Relief -Violation of CWA § 301 and 33 U.S.C. § 1311**

13    35.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1

14    through 34 as though fully set forth herein including all allegations in the NOTICES attached

15    hereto  and incorporated herein by reference.

16    36.    REDWOOD has and continues to violate the CWA as described in the NOTICE and as

17    evidenced by the discharges of pollutants to the wetlands, Petaluma River, San Antonio Creek,

18    San Francisco Bay, Mud Slough, and West Slough without a CWA § 402(a) NPDES permit in

19    violation of Section 301 of the CWA and 33 U.S.C. § 1311.

20    37.    The violations of REDWOOD are ongoing and will continue after the filing of this

21    Complaint.  PLAINTIFF alleges herein all violations which may have occurred or will occur

22    prior to trial, but for which data may not have been available or submitted or apparent from the

23    face of the reports or data submitted by REDWOOD to the RWQCB or to PLAINTIFF prior to

24    the filing of this Complaint.  Each of the REDWOOD's violations are separate violations of

25    the CWA.

26    38.    Continuing commission of the actions alleged above by REDWOOD will irreparably

27    harm PLAINTIFF and its members for which harm they have no plain, speedy or adequate

28    remedy at law.

Complaint for Injunctive Relief                        8

1    **B.   Second Claim for Relief - Violation of CWA  § 402(p) and 33 U.S.C.  § 1342**

2    39.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1

3    through 38 as though fully set forth herein including all allegations in the NOTICES attached

4    hereto and incorporated herein by reference.

5    40.    REDWOOD has and continues to violate California's General Permit and thus the

6    CWA as described in the NOTICE (EXHIBIT A) and as evidenced by the unpermitted

7    discharges of pollutants to the wetlands, the Petaluma River, San Antonio Creek, the San

8    Francisco Bay, the Mud Slough, and West Slough in violation of the General Permit as

9    described in said NOTICES.

10   41.    REDWOOD has and continues to violate the General Permit and thus the CWA as

11   described in the NOTICE (EXHIBIT A) and as evidenced by its failure to comply with the

12   requirements of the General Permit for monitoring, reporting, and prevention.

13   42.    The violations of REDWOOD are ongoing and will continue after the filing of this

14   Complaint.    PLAINTIFF alleges herein all violations which may have occur or will occur

15   prior to trial, but for which data may not have been available or submitted or apparent from the

16   face of the reports or data submitted by REDWOOD to the RWQCB or to PLAINTIFF prior to

17   the filing of this Complaint.    REDWOOD's violations are each separate violations of the

18   CWA.

19   43.    Continuing commission of the actions alleged above by REDWOOD will irreparably

20   harm PLAINTIFF and its members for which harm they have no plain, speedy or adequate

21   remedy at law.

22   **C.   Third Claim for Relief - Violation of CWA §  404 and  33 U.S.C.  § 1344**

23   44.    PLAINTIFF realleges and incorporates by reference the allegations of  paragraphs 1

24   through 43 as though fully set forth herein including all allegations in the NOTICES attached

25   hereto  and incorporated herein by reference.

26   45.    REDWOOD has not obtained an approved permit to discharge into or to fill the wetlands

27   to the extent and in the manner in which REDWOOD has discharged and filled the wetland on

28   which its facilities are  located.

Complaint for Injunctive Relief                          9

46. The violations of REDWOOD are ongoing and will continue after the filing of this Complaint. PLAINTIFF alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by REDWOOD to the RWQCB or to PLAINTIFF prior to the filing of this Complaint. Each of the REDWOOD violations are separate violations of the CWA.

47. Continuing commission of the actions alleged above by REDWOOD will irreparably harm PLAINTIFF and its members for which harm they have no plain, speedy or adequate remedy at law.

**D. Fourth Claim for Relief - Claim for Violation of 42 U.S.C. § 6972 (A)(1)(A)**

48. PLAINTIFF realleges and incorporates by reference the allegations of paragraphs 1 through 47 as though fully set forth herein including all allegations in the NOTICES attached hereto and incorporated herein by reference.

49. RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972 (a)(1)(A) provides that any person may commence a civil action against any person or entity who is alleged to be in violation of any permit, standard, regulation, condition, requirement prohibition, or order which has become effective pursuant to RCRA.

50. REDWOOD violates federal laws, regulations, and statewide water quality management plans and thereby violates RCRA (40 CFR §§ 257.3 and 258.3). REDWOOD has not applied for or received a permit to discharge hazardous pollutants in violation of RCRA § 6925.

51. The violations of REDWOOD are ongoing and will continue after the filing of this Complaint. PLAINTIFF alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by REDWOOD to the RWQCB or to PLAINTIFF prior to the filing of this Complaint.

52. Continuing commission by REDWOOD of the actions alleged above will irreparably harm PLAINTIFF and its members, for which harm they have no plain, speedy or adequate remedy at law.

Complaint for Injunctive Relief                          10

**E.  Fifth Claim for Relief - Violation of  42 U.S.C. § 6972 (a)(1)(B)**

53.    PLAINTIFF realleges and incorporates by reference the allegations of  paragraphs 1 through 52 as though fully set forth herein including all allegations in the NOTICES attached hereto  and incorporated herein by reference.

54.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972 (a)(1)(B)  provides that any person may commence a civil action against any person or entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the pollution by a hazardous waste which may present an imminent and substantial endangerment to health or the environment.

55.    REDWOOD owns and operates a landfill, compost and sludge operation all of which contain pollutants and hazardous substances that generate leachate.    REDWOOD accepts petroleum contaminated soils, friable asbestos, large amounts of municipal sludge containing heavy metals, medicinals, volatile organic compounds (hereafter, "VOCs"), chemicals, and numerous other types of contaminated garbage.

56.    For purposes of RCRA, petroleum products, VOCs and heavy metals are hazardous waste within the meaning of the statute.

57.    REDWOOD's management, disposal, and storage of contaminated and hazardous garbage at its facilities has allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of provisions of the RCRA.

58.    PLAINTIFF is informed and believes, and thereon alleges that amounts of aforementioned pollutants other contaminants released by REDWOOD at its facilities are in sufficient quantity to pose an imminent and substantial risk to both the environment and to human health.

59.    Continuing commission by REDWOOD of the actions alleged above will irreparably harm PLAINTIFF and its members, for which harm they have no plain, speedy or adequate remedy at law.

60.    PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, REDWOOD will continue to violate the

Complaint for Injunctive Relief                        11

provisions of the CWA and RCRA as well as State and Federal standards with respect to the enumerated discharges and releases. PLAINTIFF avers and believes that the relief requested in this Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be adversely affected by REDWOOD's violations of the CWA, RCRA, as well as other State and Federal standards .

**F. Sixth Claim for Relief - Violation of Business & Professions Code § 17200 et seq.**

61.    PLAINTIFF realleges and incorporates by reference the allegations of paragraphs 1 through 60 as though fully set forth herein including all allegations in the NOTICES attached hereto and incorporated herein by reference.

62.    Business acts or practices that are forbidden by law, constitute unfair competition within the meaning of Business & Professions Code § 17200. Such acts or practices include, but are not limited to, those alleged above.

63.    By violating the aforementioned statutes, laws and ordinances REDWOOD has engaged in an unlawful business practice which constitutes unfair competition within the meaning of Business & Professions Code § 17200.

64.    By committing unlawful business practices and acts of unfair competition, REDWOOD is subject to an action for restitution pursuant to Business & Professions Code § 17203 and § 17204.

65.    An action for injunctive relief under the Unfair Competition Act is specifically authorized by Business & Professions Code § 17203 and § 17204.

66.    Continuing commission of the actions alleged above by REDWOOD will irreparably harm PLAINTIFF and its members for which harm they have no plain, speedy or adequate remedy at law.

67.    REDWOOD has, in the course of the operation and management of its business, engaged in the violations of laws alleged above constituting unlawful conduct. This unlawful conduct is unfair to the public and to REDWOOD's competitors who expend monies to properly and lawfully conduct similar activities in compliance with the law. This unlawful conduct subjects REDWOOD to civil penalties of up to $2,500.00 for each violation pursuant to Business &

1  Professions Code § 17206 in addition to any other penalty provided for by law, for which
2  REDWOOD is liable according to proof.

3

4        WHEREFORE, PLAINTIFF, respectfully requests this Court grant the following relief:
5  1.    Declare REDWOOD to have violated and to be in violation of RCRA for discharging
6        pollutants including volatile organic compounds  in sufficient quantity to pose an
7        imminent and substantial risk to health;
8  2.    Enjoin REDWOOD from discharging pollutants from its facilities which pose an
9        imminent and substantial risk to health and the environment;
10  3.    Order REDWOOD to comply with the substantive and procedural requirements of
11        RCRA;
12  4.    Order REDWOOD to pay civil penalties pursuant to RCRA or pay for remediation
13        projects to redress harm caused by its violations of RCRA.  Each of the above-
14        described violations of RCRA subjects REDWOOD to a civil penalty of up to
15        $27,500.00 per day per violation.  Civil penalties may be assessed for violations
16        occurring within five (5) years prior to the initiation of a citizen enforcement action;
17  5.    Declare REDWOOD to have violated and to be in violation of the CWA, for
18        discharging pollutants in violation of CWA §402, 33 U.S.C. §1342;
19  6.    Enjoin REDWOOD from discharging pollutants from its facilities to the storm water
20        system and surface waters surrounding and downstream from its facilities;
21  7.    Order REDWOOD to comply with the substantive and procedural requirements of the
22        CWA;
23  8.    Order REDWOOD to pay civil penalties, pursuant to CWA § 309(d), 33 U.S.C. §
24        1319(d) or pay for remediation projects to redress harm caused by REDWOOD's
25        violations of the CWA.. Each of the above-described violations of the CWA subjects
26        REDWOOD to a civil penalty of up to $27,500.00 per day per violation.  Civil
27        penalties may be assessed for violations occurring within five (5) years prior to the
28        initiation of a citizen enforcement action;

Complaint for Injunctive Relief             13

9. The imposition of injunctive relief requiring REDWOOD to immediately investigate, access and categorize the extent of pollution and means to remediate its facilities.

10. The imposition of injunctive relief requiring REDWOOD to immediately remediate its facilities which have been adequately characterized or for which complete or partial remediation may commence which will remediate some or all of the pollution;

11. Declare PLAINTIFF to have violated and to be in violation of Business & Professions Code § 17200 for engaging in unlawful business practices and conduct which constitute unfair competition within the meaning of Business & Professions Code § 17200. This unlawful conduct subjects REDWOOD to civil penalties of up to $2,500.00 for each violation pursuant to Business & Professions Code § 17206 in addition to any other penalty provided for by law, for which REDWOOD is liable according to proof.

12. Award costs (including reasonable attorney, expert, witness, and consultant fees) to PLAINTIFF as authorized by the CWA, RCRA, and California Code of Civil Procedure § 1021.5

13. Award such other relief as this Court may deem appropriate.


DATED: August 26, 2003

Jack Silver, Esquire
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

Complaint for Injunctive Relief                              14

# EXHIBIT A

# Silver & Silver  Law Offices



An association including a professional corporation
902 Stevenson Street   Santa Rosa, California 95404
Phone  707-527-8811    Fax  707-527-5443

**Paul S. Silver**
Professional Corp.

**Jack Silver**

May 13, 2003

**CERTIFIED MAIL --
RETURN RECEIPT REQUESTED**

Waste Management, Incorporated, Owner
Redwood Landfill, Inc., Operator
Redwood Sanitary Landfill
8950 Redwood Highway North
Novato, CA 94945

*RE: Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Owner/Operator:

I am writing on behalf of Northern California River Watch ("River Watch") with
regard to the discharges of pollutants from facilities of Redwood Sanitary Landfill
("Redwood") at its Novato operations and sites as described below, into the Petaluma
River, San Antonio Creek and tributaries thereof, all navigable waters of the United States,
in violation of the Federal Water Pollution Control Act, the Clean Water Act.

## I.  INTRODUCTION

Section 505(b) of the Federal Water Pollution Control Act ("Clean Water Act" or
"CWA") requires that sixty (60) days prior to the initiation of a civil action under 33 U.S.C.
§1365(a),  §505(a) of the Clean Water Act,  a citizen must give notice of his/her intent to
sue to the alleged violator, the U.S. Environmental Protection Agency, the State in which
the violations occur and the registered agent of the alleged violator.

The CWA also requires that any Notice regarding an alleged violation of an effluent
standard or limitation or of an order with respect thereto, shall include sufficient
information to permit the recipient to identify: (1) the specific standard, limitation, or order
alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 2
May 13, 2003

person or persons responsible for the alleged violation; (4) the location of the alleged violation; (5) the date or dates of such violation or a reasonable range of dates during which the alleged activity occurred; and, (6) the full name, address, and telephone number of the person giving notice.

Redwood owns and operates a 1) Class III landfill, 2) composting facility, and 3) a Class II temporary sludge storage, disposal, and processing facility all of which are located on 600 acres in northern Marin County, California commonly referred to as 8950 Redwood Highway North, Novato, California.

The three operations described above are separate and distinct operations, posing distinct threats to water quality. Redwood is required to individually comply with the requirements of the Clean Water Act, file separate Notices of Intent (NOI), file separate Storm Water Pollution Prevention Plans ("SWPPP") and carry out separate monitoring and reporting for each of the operations.

River Watch hereby places Redwood on notice that following the expiration of sixty (60) days from the date of this **Notice**, River Watch intends to bring suit in Federal District Court against Redwood for Redwood's failure to comply with the terms and conditions of California's General Industrial Storm Water Permit for Industrial Storm Water Discharges (WDID 228S003380), its un-permitted discharges of contaminated storm water, its discharges of non-storm water pollutants from the landfill and composting operations in violation of effluent limitations, and its violations of the procedural requirements of National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ and Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12-DWQ) issued pursuant to § 402 of the Clean Water Act, 33 U.S.C. § 1342 ("General Permit").

In addition, River Watch places Redwood on notice for its continuing violations of effluent standard or limitations, permit condition or requirement and/or orders issued by the Administrator or a State with respect to such standard or limitation under §505(a)(1) of the Clean Water Act, 33 U.S.C. §1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Redwood's illegally discharging to waters of the United States without a NPDES permit.

Pursuant to §301(a) of the Clean Water Act, 33 U.S.C. §1311(a), Redwood's operations are prohibited by law. Beneficial uses of the Petaluma River, San Antonio

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 3
May 13, 2003

Creek and their tributaries in the vicinity of Redwood's landfill and composting operations are being affected in a prohibited manner by these violations. Pursuant to § 304 of the Clean Water Act, 33 U.S.C. § 1311, the Environmental Protection Agency and the State have identified Redwood's landfill and composting facilities as point sources, the discharges from which contribute to violations of applicable water quality standards.

From May 1, 1998 through May 1, 2003, Redwood has violated the Clean Water Act, the Basin Plan and the Code of Federal Regulation for discharging pollutants into waters of the United States without a NPDES permit for either direct discharges or for storm water discharges. Redwood has done little or nothing to abate these violations and River Watch believes these violations are ongoing and continuing. Attached to this **Notice** and incorporated by reference are the Solid Waste Facility Permit issued to Redwood by the County of Marin, State Water Resources Control Board Water Quality Order No. 97-03-DWQ, NPDES General Permit No. CAS000001 and California Regional Water Quality Control Board Order No. 95-110.

## II. BACKGROUND

### A.  Description of Site

Redwood's Novato site consists of a Class III solid waste landfill (SIC 4953), recycling (SIC 5093 and 4226), and a sludge and green waste composting site. Redwood currently also operates a Class II temporary sludge storage, disposal, and processing site. The southern area of the site has been filled with refuse to a depth of 10 to 30 feet. Groundwater levels in many areas are less than 4 feet. The property is largely unlined. Redwood is underlain by Holocene Bay Muds that are locally areas of some permeability. "[Bay Muds] are likely preferential groundwater flow pathways."(WDR 95-110 p.6)

The landfill, composting, and sludge storage, disposal, and processing sites which Redwood owns and operates sit in a wetland. The sites are surrounded by a complex network of natural and manmade surface water bodies including San Antonio Creek, Mud Slough, West Slough, and the Petaluma River. These surface waters flow into San Pablo Bay. All of these bodies of water are waters of the United States.

There are 32 storm water outlets on the perimeter of the site. The leachate pond is unlined relying upon Bay Mud to contain contaminated leachate. Leachate migrates downwards and laterally following the gradient toward the creeks and rivers.

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 4
May 13, 2003

## B.  Redwood's History

As a condition of approval of its 1995 Permit, Redwood agreed to construct a leachate collection and removal system along the entire perimeter of the landfill site as a necessary means of containing "contaminated" groundwater on site. Redwood proposed this solution to its leachate problem over 10 years ago. Redwood has not completed this fundamental project and yet continues to accept enormous amounts of refuse, sewer sludge, municipal wastewater, dead animals, petroleum contaminated soils, treated wood, grease, incinerator ash, asbestos, etc. In 2002, 400,000 tons of sewer sludge and other refuse was accepted at the landfill.

Local residents once harvested and consumed the fish of the Petaluma River such as salmon, bass, and anchovies. Shellfish such as crabs in addition to numerous birds species including great blue heron and ducks continue to rely upon the Petaluma River, San Antonio Creek and adjacent wetlands for migration and foraging purposes. The Petaluma River is now listed as impaired under 303(d) of the Clean Water Act. Beneficial uses of San Antonio Creek and Mud Slough bordering Redwood are estuarine and wildlife habitat.

## C.  Federal Regulation of Discharges

The Clean Water Act regulates the discharge of pollutants into waters of the United States. The statute is structured in such a way that any discharge of pollutants is prohibited with the exception of several enumerated statutory exceptions. One such exception authorizes a polluter who has been issued a permit pursuant to the NPDES, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the 33 U.S.C. §1311(a) prohibition. Without a NPDES permit, all unauthorized discharges, including unauthorized storm water discharges, from Redwood's landfill, composting site, and Class II sludge storage, disposal, and processing sites to waters of the United States are illegal.

## D.  General Description of the Problems

Discharges by Redwood from its sites as described above to the Petaluma River and San Antonio Creek occur both directly and indirectly. Direct and unpermitted discharges of polluted storm water occur to intermittent drainages, sloughs, and San Antonio Creek - all tributaries of the Petaluma River. Indirect discharges also occur due to the fact that the site is hydrologically connected to the Petaluma River and San Antonio Creek. Drainages

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 5
May 13, 2003

and pollutants move subsurface to the surface waters. Petaluma River and San Antonio
Creek are waters of the United States.

Redwood's own self monitoring reports show that the groundwater in the area of
these sites contains many hazardous constituents. Present in amounts that exceed
background limits are benzene, arsenic, chlorobenzene, 1,4 dichlorobenzene, acetone,
toluene, chromium, MtBE, ammonia, and chloride. Some of these substances are known to
be toxic to humans and the environment in very small amounts – parts per billion. In
addition, discharge of pollutants requires a NPDES permit, which Redwood does not
possess.

A detailed record of the pollutants being discharged is found in Redwood's records
and reports prepared by Redwood.

### III. ALLEGATIONS

#### A.   Redwood Violates the Terms of the General Storm Water Permit

Materials other than storm water that discharge either directly or indirectly to waters
of the United States are prohibited. Prohibited non-storm water discharges must either be
eliminated or permitted by a separate NPDES permit. The General Storm Water Permit
requires dischargers in operation prior to October 1, 1992, to have developed and
implemented a SWPPP no later than that date. Redwood continues to operate subsequent
to October 1, 1992 and is required to develop and properly implement a SWPPP.
Inadequate implementation of a SWPPP may result in violations of Section A, Section B,
Section C of the General Permit, Discharge Prohibitions, Effluent Limitations, and
Receiving Water Limitations respectively.

#### 1.   Redwood Has not Developed or Adequately Implemented SWPPP for the Landfill Site

Information available to River Watch indicates that Redwood has not fully
developed and/or adequately implemented a SWPPP for its landfill operation. Redwood is
required to develop Best Management Practices ("BMP") using Best Available Technology
("BAT") and best conventional technology ("BCT") to control and/or eliminate
pollution.Redwood has failed to eliminate non-storm water discharges, as required, from its
landfill operation. On the contrary, total suspended solids and specific conductivity in the
storm water run "dangerously" high. Redwood has been and will continue to be in

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 6
May 13, 2003

violation every day it discharges unauthorized non-storm water and every day it discharges storm water containing pollutants identified above without adequately implementing a SWPPP for its landfill site.

Redwood is violating the General Permit by:

(1) allowing materials other than storm water (non-storm water discharges) that discharge either directly or indirectly to waters of the U.S.;

(2) causing or threaten to cause pollution, contamination, or nuisance; exceeding the specified effluent limitations identified above;

(3) discharging storm water contain a hazardous substance equal to or in excess of a reportable quantity listed in 40 CFR Part 117 and/or 40 CFR Part 302;

(4) failing to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants;

(5) failing to develop and implement a SWPPP that complies with the requirements in Section A of the General Permit and that includes BMPs that achieve BAT/BCT constitutes compliance with this requirement;

(6) discharging storm water and non-storm water to surface or ground water which adversely impact human health or the environment;

(7) causing or contributing to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan as discussed above;

(8) failing to submit a report to the RWQCB that describes the BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce any pollutants that are causing or contributing to the exceedance of water quality standards; and

(9) failure to update it SWPPP and Monitoring and Reporting Program to reflect changes in BMPs, BATs and BCTs.

The Clean Water Act prohibits storm water discharges without a permit (33 U.S.C. §1342; 40 C.F.R. §122.26). The General Permit prohibits the discharge of material other than storm water to waters of the United States which causes or threatens to cause pollution, contamination, or nuisance. The General Permit prohibits the discharge of storm water to surface or groundwater that adversely impacts human health or the environment.

Since the beginning of operations, Redwood has discharged storm water containing pollutants and non-storm water pollutants from its landfill site into San Antonio Creek and

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 7
May 13, 2003

the Petaluma River and/or their tributaries, in violation of the General Permit, during at least every rain event over 0.1 inches as measured by the National Oceanographic and Atmospheric Administration. These violations of the Clean Water Act are ongoing. Redwood will continue to be in violation of the General Permit each day it discharges non-storm pollutants and contaminated storm water from its landfill operation which cause or threaten to cause pollution, contamination or nuisance or which adversely impacts human health or the environment.

In addition, the General Permit requires dischargers in operation prior to October 1, 1992, to have developed and implemented a Monitoring Program no later than that date. Redwood continues to operate subsequent to October 1, 1992, and is required to properly implement a Monitoring Program. The Monitoring Program must be designed to ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the General Permit; and, must include visual observations and comprehensive sampling and analysis, and reporting.

Information available to River Watch indicates that Redwood has not adequately developed and/or implemented a Monitoring Program for its landfill site. For example, Redwood does not the take the necessary monitoring steps to ensure that incoming materials comply with the laws and regulations which pertain to Class III landfills or Class II sludge storage, disposal, and processing sites (40 CFR - CHAPTER I § 258 et seq.) as required by permit and regulation. Redwood does not prevent the deposit of sludges and petroleum which exceed limits and does not prevent the deposit of hazardous or infectious waste. As a result, Redwood has been in continuous violation of the monitoring requirements every day since October 1, 1992.

## 2. Redwood Has not Developed or Adequately Implemented SWPPP for the Composting Site

Redwood has failed to file separate NOI and separate SWPPP for its composting operations as required by the General Permit. Redwood is required to develop Best Management Practices ("BMP") using Best Available Technology ("BAT") and best conventional technology ("BCT") to control and/or eliminate pollution.

Redwood is violating the General Permit by:

(1) allowing materials other than storm water (non-storm water discharges) that discharge either directly or indirectly to waters of the U.S.;

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 8
May 13, 2003

(2) causing or threaten to cause pollution, contamination, or nuisance; exceeding the specified effluent limitations identified above;

(3) discharging storm water contain a hazardous substance equal to or in excess of a reportable quantity listed in 40 CFR Part 117 and/or 40 CFR Part 302;

(4) failing to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants;

(5) failing to develop and implement a SWPPP that complies with the requirements in Section A of the General Permit and that includes BMPs that achieve BAT/BCT constitutes compliance with this requirement;

(6) discharging storm water and non-storm water to surface or ground water which adversely impact human health or the environment;

(7) causing or contributing to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan as discussed above;

(8) failing to submit a report to the RWQCB that describes the BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce any pollutants that are causing or contributing to the exceedance of water quality standards; and

(9) failure to update it SWPPP and Monitoring and Reporting Program to reflect changes in BMPs, BATs and BCTs.

As a result, Redwood does not properly manage for polluted runoff.  Storm water containing pollutants and non-storm water pollutants, including "dangerously" high levels of total suspended solids and specific conductivity, are discharged from the composting operations into San Antonio Creek and the Petaluma River and/or their tributaries, in violation of the General Permit, during at least every rain event over 0.1 inches as measured by the National Oceanographic and Atmospheric Administration.  These violations of the Clean Water Act are ongoing.  Redwood will continue to be in violation of the General Permit each day it discharges non-storm pollutants and contaminated storm water from its composting operation which cause or threaten to cause pollution, contamination or nuisance or which adversely impacts human health or the environment.

Redwood has continued to operate the composting site after October 1, 1992, and is required to develop and implement a Monitoring Program.  The Monitoring Program must be designed to ensure that storm water discharges are in compliance with the Discharge

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 9
May 13, 2003

Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the General Permit; and, must include visual observations and comprehensive sampling and analysis, and reporting.

In the absence of an NOI, SWPPP, and Monitoring Program for its composting operation, Redwood has been in continuous violation of the monitoring requirements every day since October 1, 1992. Furthermore, Redwood will continue to be in violation of the monitoring requirements every day it discharges non-storm water and storm water containing pollutants without developing and implementing an adequate Monitoring Program for its composting site.

### 3. <u>Redwood Has not Developed or Adequately Implemented a SWPPP for the Class II Temporary Sludge Storage, Disposal, and Processing Site (Class II site)</u>

Information available to River Watch indicates that Redwood has not fully developed and/or adequately implemented a SWPPP for the Redwood Class II site. Redwood is required to develop Best Management Practices ("BMP") using Best Available Technology ("BAT") and best conventional technology ("BCT") to control and/or eliminate pollution. All sludge storage, disposal, and/or processing of sewer sludge are currently illegal due to the failure of Redwood to file an NOI and prepare and implement a separate SWPP for the Class II site (General Permit Section E (1), (2), (6) and (7)).

Redwood is violating the General Permit by:

(1) allowing materials other than storm water (non-storm water discharges) that discharge either directly or indirectly to waters of the U.S.;

(2) causing or threaten to cause pollution, contamination, or nuisance; exceeding the specified effluent limitations identified above;

(3) discharging storm water contain a hazardous substance equal to or in excess of a reportable quantity listed in 40 CFR Part 117 and/or 40 CFR Part 302;

(4) failing to reduceor prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants;

(5) failing to develop and implement a SWPPP that complies with the requirements in Section A of the General Permit and that includes BMPs that achieve BAT/BCT constitutes compliance with this requirement;

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 10
May 13, 2003

(6) discharging storm water and non-storm water to surface or ground water which adversely impact human health or the environment;

(7) causing or contributing to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan as discussed above;

(8) failing to submit a report to the RWQCB that describes the BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce any pollutants that are causing or contributing to the exceedance of water quality standards; and

(9) failure to update it SWPPP and Monitoring and Reporting Program to reflect changes in BMPs, BATs and BCTs.

Redwood has been and will continue to be in violation every day it discharges unauthorized non-storm water and every day it discharges storm water containing pollutants identified above without adequately implementing a SWPPP for Class II site.

Redwood has continued to operate the Class II site after October 1, 1992, and is required to develop and implement a Monitoring Program. The Monitoring Program must be designed to ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the General Permit; and, must include visual observations and comprehensive sampling and analysis, and reporting.

In the absence of an NOI, SWPPP, and Monitoring Program for its Class II site, Redwood has been in continuous violation of the monitoring requirements every day since October 1, 1992. Furthermore, Redwood will continue to be in violation of the monitoring requirements every day it discharges non-storm water and storm water containing pollutants without developing and implementing an adequate Monitoring Program for its Class II site.

**B.  Redwood Discharges Pollutants in the Absence of a NPDES Permit**

Direct and unpermitted discharges of polluted storm water occur to intermittent drainages, sloughs, and San Antonio Creek which are tributaries of the Petaluma River. Indirect discharges also occur due to the fact that the site is hydrologically connected to the Petaluma River and San Antonio Creek. · Drainages and pollutants move subsurface to the surface waters. Petaluma River and San Antonio Creek are waters of the United States.

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 11
May 13, 2003

## 1. Redwood's Landfill Site Discharges to Surface Waters Without an NPDES Permit

Redwood has no NPDES permit allowing it to discharge any pollutants from its landfill site to any waters of the United States. Pollutants are discharged directly through conduits and other point sources. Redwood's landfill site is itself a point source. Redwood discharges pollutants directly and indirectly to San Antonio Creek and the Petaluma River and/or their tributaries. Pollutants include total suspended solids, specific conductivity, benzene, arsenic, chlorobenzene, 1,4 dichlorobenzene, acetone, toluene, chromium, MtBE, ammonia, and chloride. Pollutants, as discussed above, also migrate via ground water contaminating San Antonio Creek and the Petaluma River and/or their tributaries. Any discharges from the landfill by any means to waters of the United States violate the CWA.

In the absence of an NPDES permit, Redwood's landfill site is in violation of reporting and monitoring requirements required in order to discharge, and in violation of receiving water and surface water limitations.

## 2. Redwood's Composting Site Discharges to Surface Waters Without a NPDES Permit

Redwood has no NPDES permit allowing it to discharge any pollutants from its composting site to any waters of the United States. Redwood's compost operations discharge pollutants directly and indirectly to San Antonio Creek and the Petaluma River and/or their tributaries. Pollutants are discharged directly through conduits and other point sources. The composting site is itself a point source. Therefore, any discharges from the composting site by any means to waters of the United States violate the CWA. Pollutants, as discussed above, also migrate via ground water contaminating San Antonio Creek and the Petaluma River and/or their tributaries.

In the absence of a NPDES permit, Redwood's composting site is in violation of reporting and monitoring requirements required in order to discharge, and in violation of receiving water and surface water limitations.

## 3. Redwood's Class II Sludge Storage, Disposal, and Processing Site Discharges to Surface Waters Without a NPDES Permit

Redwood has no NPDES permit allowing it to discharge any pollutants from its Class II site to any waters of the United States. Redwood's Class II site discharges

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 12
May 13, 2003

pollutants directly and indirectly to San Antonio Creek and the Petaluma River and/or their tributaries. Pollutants are discharged directly through conduits and other point sources. The Class II site is itself a point source. Therefore, any discharges from the Class II site by any means to waters of the United States violate the CWA. Pollutants, as discussed above, also migrate via ground water contaminating San Antonio Creek and the Petaluma River and/or their tributaries.

In the absence of a NPDES permit, Redwood's Class II site is in violation of reporting and monitoring requirements required in order to discharge, and in violation of receiving water and surface water limitations.

## IV.  PENALTIES

Pursuant to § 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), each of the above described violations of the Clean Water Act subjects the violator to a penalty of up to $27,500.00 per day per violation for violations occurring within five (5) years prior to the initiation of a citizen enforcement action. In addition to civil penalties, River Watch will seek injunctive relief preventing further violations of the Clean Water Act pursuant to § 505(a) and § 505(d),  33 U.S.C. § 1365(a) & (d), and such other relief as is permitted by law.

Lastly, § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs and attorney's fees.

## V.  CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California. Its address is 74 Main Street, Suite D., P.O. Box 1360, Occidental, CA, 95465, telephone number 707-874-2579.

The violations of Redwood as set forth in this **Notice** effect the health and enjoyment of members of River Watch who reside and recreate in the effected area and watershed. The members of River Watch use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource is specifically impaired by Redwood's violations of the Clean Water Act.

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 13
May 13, 2003

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esq.
Silver & Silver Law Office
902 Stevenson Street
Santa Rosa, CA 95404
Tel. 707-527-8811
Fax. 707-527-5443

River Watch believes this **Notice** sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under § 505(a) of the Clean Water Act against Redwood for violations at its landfill operation, composting, and Class II sludge storage, disposal, and processing sites.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this **Notice.** However, if Redwood wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated by Redwood within the next twenty (20) days so that they may be completed before the end of the 60-day notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when that period ends.

Sincerely,

Jack Silver

cc:

Christie Todd Whitman, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Redwood Sanitary Landfill
Notice of Violations - CWA
Page 14
May 13, 2003

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 I Street
Sacramento, CA 95814

Jordan Smith, President
and Registered Agent For Service
Redwood Landfill, Inc.
8950 Redwood Highway North
Novato, CA 94945

Redwood Landfill, Inc.
P.O. Box 793
Novato, CA 94948

Waste Management, Inc.,
c/o C T Corporation System
Registered Agent for Service
818 West Seventh St.
Los Angeles, CA 90017

# EXHIBIT B

# Silver & Silver Law Offices

An association including a professional corporation
902 Stevenson Street   Santa Rosa, California 95404
Phone 707-527-8811   Fax 707-527-5443



**Paul S. Silver**
Professional Corp.

**Jack Silver**

June 30, 2003

**CERTIFIED MAIL --**
**RETURN RECEIPT REQUESTED**

Redwood Landfill, Inc., Operator
Waste Management, Incorporated, Owner
Redwood Sanitary Landfill
8950 Redwood Highway North
Novato, CA 94945

**RE:   NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE**
**RESOURCE CONSERVATION AND RECOVERY ACT**

Ladies and Gentlemen:

## I.   INTRODUCTION

On behalf of Northern California River Watch (hereafter, "River Watch"), this letter provides notification of violations of a "permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" RCRA, 42 U.S.C. 6972(a)(1)(A), by Waste Management. Inc., Redwood Landfill, Inc, Redwood Sanitary Landfill and Redwood Landfill Bio-Solids Co-Compostings (hereafter collectively, "Redwood"). RCRA, also allows suit against an entity "who has contributed to the past or present handling, storage. treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment." 42 U.S.C. 6972(a)(1)(B). This **Notice** covers both types of RCRA violations.

RCRA requires that sixty (60) days prior to the initiation of an action for violation of a permit, standard, regulation. condition, requirement, prohibition or order effective

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 2
June 30, 2003

under RCRA, a private party must give notice of the violation to the alleged violator, the
Administrator of the U.S. Environmental Protection Agency and the State in which the

violation is alleged to have occurred (42 U.S.C. § 6972(b)(1)(A)). RCRA also requires a
private party to provide ninety (90) days prior notice to the alleged violator, the
Administrator of the Environmental Protection Agency and the State in which the
violation is alleged to have occurred before initiating an action for an imminent and
substantial endangerment to human health or the environment (42 U.S.C. §
6972(b)(2)(A); Title 22 CCR § 66261 et seq.).

RCRA also requires that any Notice regarding an alleged violation of a permit,
standard, regulation, condition, requirement, or order which has become effective under
RCRA shall include sufficient information to permit the recipient to identify: (1) the
specific permit, standard, regulation, condition, requirement, or order which has allegedly
been violated; (2) the activity alleged to constitute a violation; (3) the person or persons
responsible for the alleged violation; (4) the date or range of dates of the violation; and,
(5) the full name, address, and telephone number of the person giving notice.

From June 30, 1998 through June 30, 2003 Redwood has violated RCRA and the
Code of Federal Regulation as described herein. Redwood has done little or nothing to
abate these violations and River Watch believes these violations are ongoing and
continuing.

## II. BACKGROUND

### A.    Description of Site

Arsenic, barium, benzene, chlorobenzene, chromium, MtBE, napthalene, toluene,
acetone, 1,2 EDB, 2-butanone, 1,4-dichlorobenzene, 4-methyl-2-pentanone, 1,2,4,5-
tetrachlorobenzene, carbon disulfide, methyl isobutyl ketone, methylene chloride,
ammonia, and cyanide are just some of the hazardous constituents detected in ground
water under Redwood's Novato site. Redwood's Novato site consists of a Class III solid
waste landfill (SIC 4953), recycling (SIC 5093 and 4226), and a sludge and green waste
composting site. Redwood also currently operates a Class II temporary sludge storage,
disposal, and processing site. Heavy metals, volatile organic compounds, and high
concentrations of constituents such as ammonia, chloride, and total dissolved solids are
routinely detected in the groundwater beneath the site. The southern area of the site has
been filled with refuse to a depth of 10 to 30 feet. Groundwater levels in many areas are

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 3
June 30, 2003

less than four feet.  The property is largely unlined. Redwood is underlain by Holocene Bay Muds that are locally areas of some permeability. "[Bay Muds] are likely preferential groundwater flow pathways."(WDR 95-110p.6)

The landfill, composting, sludge storage, disposal, and processing sites which Redwood owns and operates sit in a wetland.  The sites are surrounded by a complex network of natural and manmade surface water bodies including San Antonio Creek, Mud Slough, West Slough, and the Petaluma River.  These surface waters flow into San Pablo Bay - all waters of the United States.

The leachate pond is unlined and relies upon Bay Mud to contain contaminated leachate.  Leachate migrates downwards and laterally following the gradient toward the creeks and rivers.

## B.    Redwood's History

Local residents once harvested and consumed the fish of the Petaluma River such as salmon, bass, and anchovies.  Shellfish such as crabs, in addition to numerous birds species including great blue heron, egrets, and ducks continue to rely upon the River, creeks, and wetlands for migration and foraging purposes.  The Petaluma River is now listed as impaired under 303(d) of the Clean Water Act.  Beneficial uses of San Antonio Creek and Mud Slough bordering the Redwood sites are estuarine and wildlife habitat.

As a condition of approval of its 1995 permit, Redwood agreed to construct a leachate collection and removal system along the entire perimeter of the landfill site as a necessary means of containing "contaminated" groundwater on site.  Redwood proposed this solution to its leachate problem over 10 years ago.  Redwood has not yet completed this fundamental project, but continues to accept enormous amounts of refuse, sewer sludge, municipal wastewater, dead animals, petroleum contaminated soils, treated wood, grease, incinerator ash, asbestos. etc.  In 2002, 400,000 tons of sewer sludge and other refuse was accepted at the landfill site.  In addition, Redwood has expanded beyond its permit, allowed substantial unpermitted traffic to tip loads at the site, (Environmental Health Notice and Order and SNO - June 2002) and seeks to further expand its operations in the sensitive wetlands on which it is now located.

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 4
June 30, 2003

## A.    Federal Law and Regulation

Provisions of RCRA govern the use and operation of landfills such as Redwood's facility in Novato.  RCRA requires compliance with the Clean Water Act (40 CFR Section 258.27, which requires that all municipal sold waste landfill facilities be operated in compliance with the Clean Water Act), state and regional water quality control plans. The statutory mission of RCRA is to assure that all waste management posing a threat to human health and/or the environment is regulated from "cradle to grave." Hazardous waste management practices which are conducted in a manner which protects human health and the environment is one of the main requirements of RCRA.

## B.    Description of the Problems

Redwood's own self monitoring reports indicate that the hazardous constituents exceed the maximum contaminant levels ("MCLs") set by the State which indicate when a substance becomes hazardous.  Heavy metals have been a consistent hazardous contaminant at the Redwood site contaminating the ground and groundwater, creating a hazardous, unsafe and threatening condition for the environment.  For example in the last quarter of 2002, arsenic was detected at 0.11 mg/liter (MCL is 0.05mg/l); barium was detected at 5.0 mg/l (MCL is 1.0 mg/l); chromium was detected at 0.27 mg/l (MCL 0.05mg/l); and lead was detected at 1.6 mg/l (MCL is 0.05 mg/l).  These are just a representative sample showing that groundwater in the area contains volatile organic compounds ("VOCs"), heavy metals, and high concentrations of other hazardous constituents.

Such releases constitute discharges of pollutants and must be regulated pursuant to a permit under RCRA.  Redwood does not have a permit for such discharges.

Hazardous VOCs do not occur in nature.  The presence of any hazardous VOCs in groundwater indicates a release from a manmade source and is a threat to the health and safety of persons or the environment.   A representative sample of VOCs and other hazardous constituents detected at the Redwood site include chlorobenzene (result 12.0 m/liter), acetone (result 62.0 m/liter), toluene (result 8.4 m/liter), chromium (result 0.27 mg/liter), carbon disulfide, and MtBE (result 6.5 m/liter).  Many constituents are not properly monitored, including ammonia, chloride, and total dissolved solids.  Ammonia is very toxic and subject to more stringent controls in the northern region of San Francisco Bay for the protection of the migratory corridor running through the upper Central Bay, San Pablo Bay, and upstream reaches (Water Quality Control Plan San

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 5
June 30, 2003

Francisco Bay Region 2). Groundwater is also being contaminated by excess iron. The maximum background limit for iron is 37.0 mg/liter; however Redwood's groundwater contains 120 mg/liter of iron and greater. Redwood's management of known hazardous substances is inadequate and includes arsenic (result 0.11 mg/liter), ammonia, total organic carbon, and total nitrogen. Individually and collectively, the releases from Redwood continue to present serious and chronic groundwater pollution problems for human health and the environment.

Leachate generation, sewer sludge storage, disposal, and processing are ongoing sources of groundwater pollution problems for Redwood. Despite over-capacity Redwood continues to accept large amounts of waste daily. Strong landfill gas odors can be detected by scent inside Redwood's administration building indicating the improper management of wastes.

As mentioned above, RCRA also requires compliance with the Clean Water Act, state and regional water quality control plans. Redwood's current permits including its federal General Storm Water Permit, Waste Discharge Requirements issued by the state of California, its Solid Waste Facilities permit issued by the County of Marin and the California Integrated Waste Management Board are attached hereto and fully incorporated into this **Notice**.

### III.  ALLEGATIONS

A.  **Redwood's Municipal Solid Waste Landfill Facility (all contiguous land and structures, other appurtenances, and improvements on the land used for disposal of solid waste) Operations Violate Permits, Standards and Regulations 42 U.S.C. §6972(a)(1)(a))**

Redwood's disposal, handling, and storage of hazardous products at its facilities has allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of provisions of RCRA including, but not limited to, provisions governing general operating requirements for landfills, release detection and prevention requirements, release reporting and investigation requirements, and release response and corrective action requirements (RCRA including implementing regulations 40 CFR 117; 40 CFR 257; 40 CFR 258; 40 CFR 141.61 and 40 CFR 141.62).

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 6
June 30, 2003

1. Redwood's Municipal Solid Waste Landfill Facility Violates Location Restrictions.

Redwood is located in a flood plain (swamp and overflowed lands-legal property description). Redwood is required to demonstrate that its municipal solid waste landfill facility does not washout solid waste during floods, does not restrict the flow of a 100-year flood, and does not reduce the temporary water storage capacity of the flood plain. Although Redwood has constructed many berms, levees and dikes around and in this wetland area, it has not made the required demonstration. All of these manmade structures including the buried garbage, impervious pads, buildings, and compacted soils permanently destroy the water storage capacity and flow of the flood plain.

Furthermore, Redwood is located in a sensitive wetland (swamp and overflowed lands-legal property description) that is the northern most waters of San Francisco Bay. Wetlands like this one, are rare and play an important function in the filtration and storage of fresh water among other vital functions. Activities in and proposed for wetlands require the involvement of the U.S. Army Corps of Engineers. Redwood has not obtained a permit from the U.S. Amy Corps of Engineers for dredge or fill of wetlands. Waste is piled as high as 30 feet on the unlined portion of this site. The enormous weight of the refuse makes the Bay Muds under the refuse sink, compact, and contact groundwater. Redwood, nevertheless intends to expand its operations and bring more waste within inches of the groundwater in contradiction of the law which requires a five foot separation. Redwood does not have approval from the U.S. Army Corps of Engineers for such an expansion; and, Redwood does not rebut the presumption that practicable alternatives, that do not involve wetlands, exist.

Furthermore, volatile organic compounds, that are not found in nature, are released from the landfill. Contaminated runoff reaches surface waters. In addition, noise, dust, flares for landfill gas/leachate, litter, and increased invasion of the wetland by landfill bird populations all contribute to significant degradation of the wetland. Redwood has constructed many berms, levees and dikes around and in this wetland area. All of these devices including the buried garbage, impervious pads, buildings, and compacted soils significantly degrade the wetland. Redwood fails to assess this impact or to effectively minimize the impacts. Redwood has not demonstrated that the existing or lateral expansion of the municipal solid waste landfill facility will not cause or contribute to significant degradation of the wetland.

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 7
June 30, 2003

2.    Redwood Does not Comply With Required Operating Criteria

Proper monitoring is the cornerstone and single most important tool available to properly manage hazardous waste. Incoming waste at Redwood is not adequately inspected or otherwise monitored.  Hazardous waste and/or infectious waste are dumped at the site.   Sludge is a large potential source of heavy metals.  Sludge haulers have access to the Redwood site around the clock seven days a week.  Although Redwood claims that it does not accept hazardous waste, hazardous substances and other pollutants have been detected in water samples including 1,4-dichlorobenzene and 1,2-dibromoethane.  As listed above, hazardous constituents detected at the Redwood site include benzene detected at 10.0 mg/liter (MCL is 5.0 mg/liter), chlorobenzene (result 12.0 mg/liter), acetone (result 62.0 m/liter), toluene (result 8.4 m/liter), chromium (detected at 0.27 mg/liter (MCL is 0.05 mg/l), carbon disulfide (result 14.0 mg/liter), MtBE (result 6.5 mg/liter), etc..

Many constituents are not properly monitored including ammonia and chloride. For example in the year 2002, of the 13 wells tested for ammonia, 9 had matrix interference and an accurate analysis was not possible.  Matrix interference, improper holding times, and temperature are problems that occur on a regular basis with samples which Redwood sends to its laboratory in Colorado.

Redwood does not maintain adequate cover of the refuse dumped at the site.  Litter and a large bird population are strong indicators of exposed garbage.  Inspections of the site demonstrate and document that Redwood does not always maintain the six inches of earthen cover required, and seagulls congregate around the property.

As explained above, Redwood attracts a large number of birds.  Birds are carriers of disease.  Redwood does not adequately control for disease as a result of the numerous birds that are attracted to the exposed refuse.

Strong landfill gas odors are a chronic problem for Redwood.  Landfill gases, as opposed to landfill odors, can be explosive.  Proper landfill management minimizes the release and concentration of explosive gases.  Proper monitoring leads to the proper control of gases.  Redwood has inadequate control and monitoring of landfill gases.

Inspections conducted by the lead enforcement agency and Redwood personnel document standing water is a persistent problem for Redwood.  Standing water is a result of inadequate run-off/run-on systems.   Storm water that is not properly managed

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 8
June 30, 2003

eventually percolates through the soil and refuse to contaminate the ground and surface waters. Redwood does not manage its run-off/run-on systems as required.

3.    Redwood Fails to Meet Design Criteria

Notwithstanding its outdated location within wetland and estuarine habitat, Redwood has aggressively pursued permission to expand its landfill laterally in this sensitive area. The law prohibits the filling of landfills that will result in less than a five foot separation between garbage and groundwater. Redwood has insisted that this rule be ignored in its case, arguing that a few inches of separation by way of a liner will suffice. Furthermore, despite the fact that the lateral expansion has not been designed to accept Class II wastes, Redwood intends to leave open the option to accept Class II waste at the expansion area for which the facility has not previously obtained a permit.

4.    Redwood Does Not Properly Monitor or Manage for Groundwater
Contamination or Corrective Action

Although monitoring is the mainstay of proper management and control of pollution, Redwood has a less than thorough history of proper monitoring. Many constituents are not properly monitored including ammonia and chloride. For example in the year 2002, of the 13 wells tested for ammonia, 9 had matrix interference and an accurate analysis was never completed. Matrix interference, improper holding times, and temperature are problems that occur on a regular basis with samples which Redwood sends to its laboratory in Colorado.

As a condition of approval of its 1995 permit, Redwood agreed to construct a leachate collection and removal system along the entire perimeter of the landfill as a necessary means of containing "contaminated" groundwater on site. Redwood proposed this solution to its leachate problem over 10 years ago. Redwood has not yet completed this fundamental project but continues to accept enormous amounts of refuse, sewer sludge, municipal wastewater, dead animals, petroleum contaminated soils, treated wood, grease, incinerator ash, asbestos, etc. In 2002, 400,000 tons of sewer sludge and other refuse was accepted at the landfill.

Redwood's groundwater monitoring system, sampling, analysis, detection monitoring, and assessment monitoring programs are inadequate as indicated by the continuing and substantial discharges of hazardous substances to the groundwater and the build up of toxic constituents on site. The routine absence of sampling and sampling

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 9
June 30, 2003

data is a violation of RCRA requirements (42 U.S.C. §6924, §6925). Adequate sampling and monitoring are necessary to facilitate useful pollution prevention strategies, proper management, and a healthy environment. Pursuant to 40 CFR 257.3 and 40 CFR 258.3, violations of other federal laws, regulations, and statewide water quality management plan constitute violations of RCRA.

Quarterly groundwater samples which Redwood sends to its laboratory are compromised. Constituents including chromium, lead, and arsenic often have matrix interference. Samples often arrive at the laboratory at temperatures which further render analyses inappropriate. Mercury, ammonia, silver, copper, and chloride are likewise not properly reported or monitored. These monitoring violations violate the provisions of RCRA.

Redwood does not the take the necessary monitoring steps to ensure that incoming materials comply with the laws and regulations which pertain to landfills (40 CFR §257 and §258 et seq.) as required by permit and regulation, does not prevent the deposit of sludge and petroleum that exceed limits, and, does not prevent the deposit hazardous or infectious waste.

**B.     Redwood's Operations Present an Imminent and Substantial Endangerment to Human Health and the Environment (42 U.S.C. §6972(a)(1)(B)).**

Redwood disposes of, handles, treats and stores hazardous products at its facility in a manner which has allowed significant quantities of hazardous constituents including petroleum products, heavy metals, carcinogenic substances, and volatile organic compounds, to be discharged to soil and groundwater beneath the landfill site, to surface waters, and to adjacent properties. These pose an imminent and substantial endangerment to public health, employees, and the environment.

Redwood's own self-monitoring reports demonstrate and document that the groundwater in the area of the landfill site contains many hazardous constituents. Present in amounts that exceed background or allowable limits are benzene, arsenic, chlorobenzene, 1,4 dichlorobenzene, acetone, toluene, chromium, MtBE, ammonia, and chloride. These substances are known to be toxic to humans and the environment in very small amounts – parts per billion, and pose an imminent and substantial endangerment to public health, employees, and the environment.

Redwood's Class II site accepts large amounts of sewer sludge – approximately 34,700 tons per year, from all over the Bay area. Redwood does not, however, have a

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 10
June 30, 2003

leachate collection and removal system that adequately protects groundwater from the impacts associated with sewer sludge such as heavy metals and organic chemicals. Hazardous substances associated with sewer sludge such as heavy metals and organic chemicals (benzene, arsenic, chlorobenzene, 1,4 dichlorobenzene, acetone, toluene, chromium, MtBE, ammonia, and chloride in this case) are leaching into soil and groundwater.

The pollutants identified above are specifically regulated under RCRA. (40 CFR 261) and are known to cause cancer and birth defects. In California, these chemicals have been listed under California's Safe Drinking Water & Toxic Enforcement Act of 1986 (Health & Safety Code § 25249.5 et seq., - Proposition 65).

Mismanagement and acceptance of hazardous or otherwise regulated waste at this largely unlined Class III landfill including hospital waste, poses an imminent and substantial endangerment to public health, employees, and the environment. Redwood improperly disposes of landfill generated leachate containing hazardous substances into groundwater, onto roads, fields, and into surface waters.

## IV.  PENALTIES

Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), each of the above described violations subjects the violator to a civil penalty of up to $27,500.00 per day per violation. Civil penalties may be assessed for violations occurring within five (5) years prior to the initiation of a citizen enforcement action. In addition to civil penalties, River Watch will seek injunctive relief preventing further violations of RCRA and such other relief as is permitted by law, including but not limited to the recovery of attorney costs and fees.

## V.  CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California. River Watch is organized under the laws of the State of California. Its address is 74 Main Street, Suite D., P.O. Box 1360, Occidental, CA, 95465, telephone number 707-874-2579.

The violations of Redwood as set forth in this **Notice** effect the health and enjoyment of members of River Watch who reside and recreate in the effected area and

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 11
June 30, 2003

watershed.  The members of River Watch use this watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like.  Their health, use and enjoyment of this natural resource is specifically impaired by Redwood's violations of RCRA.

River Watch has retained legal counsel to represent them in this matter.  All communications should be addressed to:

Jack Silver, Esq.
SILVER & SILVER LAW OFFICES
902 Stevenson Street
Santa Rosa, CA 95404
Tel. 707-527-8811
Fax. 707-527-5443

River Watch believes this **Notice** sufficiently states grounds for filing suit.  At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under § 505(a) of the Clean Water Act against Redwood for violations at the Redwood landfill, composting, and Class II sites as described herein.

During the notice period, River Watch is willing to discuss effective remedies for the violations set forth in this **Notice.**   However, if Redwood wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated within the next twenty (20) days so that they may be completed before the end of the notice period.  River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Sincerely,

Jack Silver

cc:
Christie Todd Whitman, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Redwood Sanitary Landfill
Notice of Intention to File Suit - RCRA
Page 12
June 30, 2003


Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency - Region 9
75 Hawthorne St.
San Francisco, CA 94105

Celeste Cantú, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812-0100

Mark Leary, Executive Director
Calif. Integrated Waste Mgmt. Board
1001 I Street
Sacramento, CA 95814

Jordan Smith, President
and Registered Agent For Service
Redwood Landfill, Inc.
8950 Redwood Highway North
Novato, CA 94945

Redwood Landfill, Inc.
P.O. Box 793
Novato, CA 94948

Andrew W. Kenefick,
Senior Legal Counsel, Western Group
Waste Management
801 Second Avenue, Suite 614
Seattle, WA 98104