Jack Silver, Esquire SBN# 160575
Law Office of Jack Silver
Jerry Bernhaut, Esquire SBN# 206264
Post Office Box 5469
Santa Rosa, California 95402-5469
Telephone: (707) 528-8175
Facsimile: (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
Northern California River Watch

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation, | CASE NO: C07-05058 WHA |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER DISMISSING THE COMPLAINT** |
| v. | |
| WASTE MANAGEMENT  INC., REDWOOD LANDFILL INC., and DOES 1-10, Inclusive, | |
| Defendants. | Date:        December 20, 2007<br>Time:        8:00 a.m.<br>Ctrm:        9, 19th Floor<br>Judge:       Hon. William H. Alsup |
| | Complaint Filed: October 1, 2007 |

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.   FACTUAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4   III.  LEGAL ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5       A.   River Watch's Notice Meets All Requirements of the CWA as
             Defined by Statute and Interpreted by Case Law for its Allegations
6            of Point Source Discharges  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7            1.   River Watch's Notice Contains Sufficient Information to Permit
                  Defendant to Identify the Activity Alleged to Constitute a Violation
8                 of the Prohibition against the  Discharge of Pollutants From a Point
                  Source Without a NPDES Permit  . . . . . . . . . . . . . . . . . . . . . . . . 6
9
             2.   River Watch's Notice Contains Sufficient Information to Permit
10                Defendant to Identify the Location of Alleged  Discharges of
                  Pollutants From a Point Source Without a NPDES Permit . . . . . . . . . . . . . 8
11
             3.   River Watch's Notice Contains Sufficient Information to Permit
12                Defendant to Identify Dates of Point Source Discharges Made
                  Without an NPDES Permit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
13
        B.   River Watch's Notice Meets All Requirements of the CWA as Defined
14           by Statute and Interpreted by Case Law for its Allegations of Stormwater
             Violations of the General Permit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
15
             1.   River Watch's Notice Contains Sufficient Information to Permit
16                Defendant to Identify the Activity Alleged to Constitute a Violation
                  of California's General Industrial Storm Water Permit . . . . . . . . . . . . . 11
17
             2.   River Watch's Notice Contains Sufficient Information to Permit
18                Defendant to Identify the Location  of Violations of California's
                  General Industrial Storm Water Permit  . . . . . . . . . . . . . . . . . . . . . 13
19
             3.   River Watch's Notice Contains Sufficient Information to Permit
20                Defendant to Identify the Dates of Violations of California's General
                  Industrial Storm Water  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
21
    IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22

23

24

25

26

27

28

C07-05058 WHA
Plaintiff's Opposition to Motion for Order Dismissing Complaint

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*California Sport Fishing Protection Alliance v. City of West Sacramento*
905 F. Supp. 792 (E.D. CA 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4

*Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy*
305 F. 3d 943 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

5

6

*Friends of Frederick Seig Grove #4 v. Sonoma County Water Agency*
124 F. Supp.2d. (N.D. CA 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,14

7

*Hallstrom v. Tillamook County*
493 U.S.20 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8

9

*NRDC v. Southwest Marine ("Southwest I")*
945 F. Supp. 1330 (S.D. Cal 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

10

*NRDC v. Southwest Marine ("Southwest II")*
236 F. 3d 985 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 5,11,13,14,15

11

12

*San Francisco BayKeeper v. Tosco Corporation et al.*
309 F. 3d 1153 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 5,6,9,14,15

13

*Southwest Center For Biological Diversity v. Bureau of Reclamation*
143 F.3d 515 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14

15

*Washington Trout v. MacCain Foods, Inc.*
45 F.3d 1351 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16

**STATUTES AND REGULATIONS**

17

33 U.S.C. §1311(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,5

18

33 U.S.C. § 1342(p) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

19

33 U.S.C. §1365(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20

42 U.S.C. § 6901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21

CWA § 301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3,5

22

CWA § 303(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

23

CWA § 402(p) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

24

CWA § 505(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

25

40 CFR § 135.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,15

26

27

28

1.  **INTRODUCTION**

Plaintiff Northern California River Watch ("River Watch") served defendants Waste Management Inc. and Redwood Landfill Inc.("Defendants") with a Notice of Violations and Intent To File Suit under the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a), CWA § 505(a) on February 6, 2007 alleging violations of CWA §301(a), 33 U.S.C. §1311(a) for discharging pollutants from a point source to waters of the United States without a National Pollution Discharge Elimination System ("NPDES") Permit, and for violations of California's General Industrial Storm Water Permit pursuant to CWA § 402(p), 33 U.S.C. § 1342(p).  Declaration of Jerry Bernhaut, Exh. A at 2.

A period of negotiation followed, during which River Watch sought agreement by the defendants to participate in a study involving sampling of surface waters adjacent to the landfill site, relating to the biological impacts to United States waters from alleged releases of pollutants from the landfill based upon migration patterns from monitoring wells.  During this negotiation period defendants refused to provide River Watch with their Storm Water Prevention and Pollution Plan ("SWPPP").

After it became clear that defendants were unwilling to enter into an agreement to participate in such a study and sampling regime, River Watch filed a its Complaint on October 1, 2007, alleging violations as detailed in the aforementioned Notice.  River Watch has also served defendants with a Notice of Violations and Intent To File Suit under the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq., raising issues of groundwater contamination and violations of regulations regarding solid waste disposal.  At the conclusion of the 90-day notice period under RCRA, River Watch intends to amend its Complaint to include the violations of RCRA alleged in that Notice letter.

Defendant WASTE MANAGEMENT INC. was dismissed without prejudice from the lawsuit on October 31, 2007.  Defendant REDWOOD LANDFILL, INC. has filed the current Motion For an Order Dismissing the Complaint based solely on the issue of whether River Watch's CWA Notice letter complies with the citizen suit notice requirements of the CWA.  (Defendant's P&As, p.3).

In its supporting brief, defendant speculates that River Watch dismissed a prior complaint alleging CWA violations, "in apparent acknowledgment that its 2003 notice letter also contained legal deficiencies" (Defendant's P&As, p. 2).  Instead, that prior case was dismissed on the request of other

1  environmental groups opposing the expansion Environmental Impact Report, as those groups were of

2  the opinion that lawsuit by River Watch might distract from their action.  These groups have been

3  successful thus far in their effort to defeat the expansion. (Declaration of Jerry Bernhaut,  p. 2 at 4).

4  Defendant's supposition is an apparent intentional misstatement of River Watch's intentions and an

5  attempt to prejudice the Court with false and misleading information.

6      Defendant's landfill site which is the subject of this lawsuit  is clearly a point source.  Within the

7  site are numerous point sources such as its waste ponds.  Defendant's own records show a migration of

8  pollutants off-site including ammonia and iron. Both are toxic at the levels being discharged. The entire

9  site is surrounded by waters of the United States –  the San Antonio Creek, West Slough and adjacent

10  wetlands. (Aerial map of site - Declaration of Jerry Bernhaut, Exh. B at 3)  There is no place for the

11  pollution to go other than into waters of the United States and defendant has no NPDES permit covering

12  point source discharges.  Discharging non-stormwater pollutants is a violation of the General Stormwater

13  Permit under which the defendant operates the landfill site.  Therefore, River Watch has alleged violations

14  of the General Permit's prohibition on such discharges and alleged an inadequate implementation of

15  defendant's SWPPP. If the SWPPP was adequate and fully implemented no such illegal discharge would

16  be occurring.

17  ## II.  FACTUAL BACKGROUND

18      The Redwood Landfill is located on 600 acres in northern Marin County and forms one contiguous

19  point source completely surrounded by surface waters. San Antonio Creek forms the northern and eastern

20  boundary of the site, and is approximately 120 to 230 feet wide near the landfill. The bottom elevation

21  of San Antonio Creek varies from 5 to 12 feet below mean sea level ("msl"). The site is bordered on the

22  west by the West Slough, which is approximately 10 to 15 feet wide and has a bottom elevation of 2 to

23  15 feet below msl. The site's southern border , the South Slough, is approximately 10 feet wide.  Its

24  bottom elevation has not been surveyed. All are waters of the United States.  The surface waters

25  surrounding the site and the adjacent wetlands flow into San Pablo Bay.  Sand and silt channels

26  underlying the landfill, identified in defendant's EIR and Waste Discharge Requirements, provide

27  preferential pathways for groundwater flow from the landfill to surrounding waters. The Petaluma River,

28  San Antonio Creek, West Slough and adjacent wetlands provide habitat for shellfish and a diverse

1  population of migrating bird species. The Petaluma River is now listed as impaired for sediment and

2  nutrients under CWA § 303(d). Defendant's operations and activities on the landfill site create discharges

3  of nutrients to the Petaluma River. The point source discharges from the landfill to surrounding waters

4  are violations of CWA  § 301(a), 33 U.S.C. § 1311(a).

5      Defendant's failure to develop and implement an adequate SWPPP, as required by California's

6  General Industrial Storm Water Permit, violates CWA § 402(p), 33 U.S.C. § 1342(p), regulating

7  industrial storm water discharges.  The lack of an adequate SWPPP results in the direct surface discharge

8  of polluted storm water and non-storm water pollutants to surrounding surface waters, in violation of

9  CWA § 402 (p).  The surface discharge of non-storm water pollutants is also a point source discharge

10  in violation of  CWA  § 301(a), prohibiting point source discharges without a NPDES Permit.

11      Defendant argues throughout its opening brief that River Watch's Notice letter failed to provide

12  sufficient information to permit defendant to identify the locations of polluted storm water discharges,

13  the specific deficiencies in defendant's SWPPP and deficiencies in defendant's implementation of storm

14  water pollution control measures.  River Watch provided as much pertinent information as it had access

15  to.  Defendant cannot be confused about the location of its landfill, nor about the location of the waters

16  of the United States that surround the landfill.  River Watch has identified defendant's own monitoring

17  wells. Defendant had no problem in discussing these issues during negotiations with plaintiff regarding

18  the allegations contained in the Notice letter, going so far as to have one of its engineers explain

19  defendant's theories as to why there could not possibly be any off-site discharges, all the while declining

20  to conduct any valid testing.

21      River Watch requested a copy of defendant's  SWPPP as part of a document production, but was

22  refused.  River Watch has not had access to defendant's landfill site to directly observe storm water

23  pollution prevention measures. River Watch's Notice identified total suspended solids and specific

24  conductivity in storm water exceeding Environmental Protection Agency ("EPA") benchmarks as

25  evidence of defendant's failure to eliminate non-storm water discharges, indicating a failure to utilize Best

26  Management Practices. Defendant is certainly familiar with its operations and standards of  Best

27  Management Practices.

28

1    The fundamental issue raised by River Watch's Complaint is the pollution of surrounding surface

2    waters by defendant's landfill operations. River Watch's Notice letter provides more than sufficient

3    information regarding the inadequacies of defendant's leachate collection and recovery system ("LCRS"),

4    pollution of groundwater by specific constituents at specific locations, and preferential pathways for

5    subsurface migration of polluted groundwater to adjacent surface waters.  The Notice also contains a

6    number of recommendations for remedial actions.

7    To the extent that there is a disputed issue of material fact regarding whether defendant's landfill

8    operations are the source of pollutants in surrounding surface waters, there are testing procedures,

9    recognized by water quality professionals, for identifying the presence of and tracking the source of

10    specified pollutants. River Watch has consulted with a water quality testing expert who has assured River

11    Watch that there are protocols, such as testing up and downstream of a potential pollutant source, for

12    determining with a high degree of certainty whether that potential source is in fact contaminating the

13    subject water body. River Watch has sought defendant's cooperation in testing the surface waters

14    surrounding the landfill site. Defendant insists that it would be too difficult to obtain conclusive results,

15    despite the recognized protocols.  Defendant prefers to maintain a posture of willful blindness while

16    raising procedural challenges, such as the Motion now before this Court.

17    **III. LEGAL ARGUMENT**

18    Defendant claims River Watch's Notice fails to meet the requirements of 40 CFR § 135.3(a), in

19    that the Notice fails to provide sufficient information to permit defendant to identify [1] the activity

20    alleged to constitute a violation, [2] the location of the alleged violations, and [3] the date or dates of

21    such violations.[1]  Defendant claims that the Supreme Court and the Ninth Circuit require strict

22    compliance with notice requirements.  In support of this contention, defendant cites *Hallstrom v.*

23    *Tillamook County*, 493 U.S.20, 31-33 (1989), in which the court dismissed a citizen suit because plaintiff

24    had failed to notify the state and the EPA, as required by the notice provision, *Washington Trout v.*

---

[1]    The pertinent language reads as follows: "Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice."  40 CFR § 135.3(a)

1   *MacCain Foods, Inc,* 45 F.3d 1351, 1354 (9th Cir. 1995) in which the court dismissed a citizen suit

2   because two named plaintiffs were not listed in the notice, and *Southwest Center For Biological Diversity*

3   *v. Bureau of Reclamation,* 143 F.3d 515, 520 (9th Cir. 1998), in which a citizen suit was dismissed

4   because the notice failed to identify in any manner one of the violations named in the complaint.

5   (Defendant's P&A's, p.5)   In each of the above cited cases, a very specific procedural requirement of

6   the notice provision was omitted, and the courts strictly construed the notice requirement to find a lack

7   of subject matter jurisdiction.

8          In discussing whether a citizen suit notice contains sufficient information to permit a recipient to

9   identify the subject activity, location and dates of alleged violations, the Ninth Circuit has developed a

10  pragmatic standard,  "in practical terms, the notice must be sufficiently specific to inform the alleged

11  violator about what it is doing wrong, so that it will know what corrective actions would avert a lawsuit",

12  *NRDC v. Southwest Marine Inc.* 236 F.3d 985, 996 (9th Cir. 2000).

13         In two Ninth Circuit cases, *Community Ass'n for Restoration of the Env't v. Henry Bosma Dairy,*

14  305 F. 3d 943 (9th Cir. 2002) (hereafter "*CARE*") and *San Francisco BayKeeper v. Tosco Corporation*

15  *et al.* 309 F. 3d 1153 (9th Cir 2002) (hereafter "*Tosco*") the Ninth Circuit has given guidance and clarity

16  as to the requirements of what constitutes sufficient information to permit the recipient to identify: (1)

17  the activity alleged to constitute a violation, and (2) the date or dates of such violation.   The "key

18  language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify'

19  the alleged violations and bring itself into compliance." The regulation does not require a plaintiff to "list

20  every specific aspect or detail of every alleged violation." *CARE*   at 951.   "In short, the Clean Water

21  Act's notice provisions and their enforcing regulations require no more than 'reasonable specificity'."

22  *Tosco* at 1158.

23  **A.    River Watch's Notice Meets All Requirements of the CWA as Defined by Statute and Interpreted by Case Law for its Allegations of Point Source Discharges**

24

25         CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharging pollutants from a point source to waters

26  of the United States without a NPDES Permit. Defendant claims River Watch's Notice fails to provide

27  sufficient information to satisfy the CWA notice provision requirements regarding the alleged activity

28  constituting a violation, the location of alleged violations and the dates of alleged violations.  At many

points in its opening brief, defendant claims  River Watch's Notice fails to identify dates, locations, specific activities, treating the key language of the CWA notice provision, "sufficient information to permit the recipient to identify" as if it read "specific information to identify".  In interpreting the meaning of the term "sufficient information to permit the recipient to identify", the courts have recognized that defendants  have superior access to their own facilities and records.

> "We hold that BayKeeper's allegation that coke spilled into the slough each day of ship loading-even on days for which BayKeeper did not provide specific dates-was sufficiently specific to fulfill its notice obligation. Tosco is obviously in a better position than BayKeeper to identify the exact dates, or additional dates, of its own ship loading. The notice regulation does not require BayKeeper in such a situation to provide the exact dates of alleged violations; rather it requires only that BayKeeper provide sufficient information to permit the recipient to identify the date or dates". *Tosco* at 1158-59

Courts have also recognized that it would place an unnecessary burden on a citizen plaintiff to require a citizen suit Notice to list every violation in detail,

> "The purpose of the 60-day notice is to provide the agencies and the defendant with information on the cause and type of environmental laws or orders the defendant is allegedly violating so that the agencies can step in, investigate, and bring the defendant into compliance. The point is to trigger agency enforcement and avoid a lawsuit. Congress did not intend to unduly burden citizens by requiring them to basically carry out the job of the agency." *Care at 953.*

Therefore, citizen suit Notice letters have been deemed adequate which direct the recipient to familiar activities and to regulations and records which contain information sufficient to identify the nature, date and location of the activity alleged to constitute a violation.  As demonstrated below, River Watch's CWA Notice satisfies the notice provision requirements as interpreted by the courts.

   1.   River Watch's Notice Contains Sufficient Information to Permit Defendant to Identify the Activity Alleged to Constitute a Violation of the Prohibition against the  Discharge of Pollutants From a Point Source Without a NPDES Permit

In addressing point source discharges, River Watch's Notice focuses on the leaching of pollutants from the landfill to groundwater which migrates subsurface to adjacent surface waters. The Notice describes the subsurface movement of waste from the landfill to adjacent surface waters via sand and silt channels, identified in defendant's EIR and Waste Discharge Requirements, which provide preferential pathways for groundwater flow. (Declaration of Jerry Bernhaut, Exh. A, p.1) River Watch's Notice cites specific examples of defendant's own self monitoring reports which show pollutants present in

1  groundwater at concentrations which exceed water quality standards. (Declaration of Jerry Bernhaut,

2  Exh. A, p.4).

3       Defendant's opening brief devotes only one of seventeen  pages (page 16)  to challenging the

4  adequacy of River Watch's Notice regarding point source discharges, virtually ceding the adequacy of

5  the Notice regarding such discharges. In this token effort, defendant contends that "River Watch merely

6  states that '[d]ue to the hydrological connection between the waste disposal site and waters of the United

7  States, point source discharges occur every day, as evidenced by the groundwater monitoring results

8  referenced above." (Defendant's P&As, p.16)

9       Defendant disregards discussion contained in the Notice of the questionable adequacy of

10 defendant's LCRS which defendant claims provides a barrier to the escape of contaminated groundwater

11 from the site.  The Notice includes recommendations for monitoring the effectiveness of the LCRS, some

12 of which were proposed by a regulator, as well as measures to improve the effectiveness of the LCRS,

13 such as integrating the LCRS with the perimeter levee, keying the LCRS trench into the Bay Mud along

14 the perimeter of the site. (Declaration of Jerry Bernhaut, Exh. A, p.3). Thus River Watch's Notice is

15 more than adequate to inform defendant what it is doing wrong and what corrective actions would avert

16 a lawsuit.

17      River Watch's Notice, with regard to point source discharges, cites specific groundwater

18 monitoring reports which identify specific pollutants in concentrations exceeding water quality protective

19 standards (Declaration of Jerry Bernhaut, Exh. A, p. 4). In a section of defendant's opening brief

20 ostensibly dealing with River Watch's stormwater allegations, defendant cites a prior River Watch Notice

21 letter in *Northern California River Watch v. Lake County Sanitation District*, wherein the court found

22 the Notice adequate, as an example of a Notice with sufficient information, in contrast to River Watch's

23 Notice in the current action. (Defendant's P&As, p. 12).  In fact, the *Lake County* Notice contained

24 allegations of collection system and storage pond overflows, both of which are point source discharges.

25 Judge Jenkins found River Watch's Notice in that case adequate because it cited records which contain

26 specific information regarding the alleged violations.  In the *Lake County* Notice, there was only one

27 reference to a specific incident and a general reference to records, prepared for Defendants, containing

28 specific information regarding other incidents. In the Notice letter presently before the Court, there are

1  a number of references to specific groundwater monitoring reports, prepared for defendant, with specific

2  information regarding individual pollutants and their location in relation to the landfill site.

3       Defendant contends, "River Watch fails to enumerate which substances have exceeded a water

4  quality parameter in a groundwater monitoring report that Redwood neglected to report? (sic) And which

5  monitoring reports are being referred to - just the three actually referenced in the CWA Notice or

6  others?" (Defendant's P&As, p. 15)   The Notice at that point is discussing a pattern in defendant's

7  reporting practices whereby explanations are offered to dismiss reports of apparent exceedances of a

8  water quality parameter rather than submitting to the Regional Water Quality Control Board an amended

9  Report of Waste Discharge establishing an Evaluation Monitoring Program, as required by defendant's

10  Monitoring Program. (Order No. 95-110, Discharge Monitoring Program, F. Reports To be Filed With

11  The Board, 2.d.)  In each referenced groundwater report, the Notice specifies the substance exceeding

12  the water quality standard. The Notice continues to state, "There are numerous other examples in

13  Redwood's Monitoring Reports of confirmed exceedances explained away as the result of sampling

14  contamination or bias, or natural background levels, begging the question when would Redwood

15  recognize a re-sampling result confirming a statistically significant exceedance of a WQPS as an

16  indication of a leachate release from the landfill?". (Declaration of Jerry Bernhaut, Exh. A, p.4).

17       By providing defendant with examples of the type of report River Watch relies on for its

18  allegations, and by stating that there are numerous other reports showing a similar pattern of avoiding

19  findings of exceedance of a water quality standard, River Watch's Notice provides more than sufficient

20  information for defendant to identify the activity constituting a violation. As in *Lake County,* River

21  Watch's Notice herein refers to records describing the nature of alleged violations to which defendant

22  has easy access, as they are reports prepared on behalf of defendant.  No court has required a citizen

23  plaintiff to list each record of an alleged violation in comparable circumstances. Therefore, River Watch's

24  Notice meets all requirements of the CWA as defined by statute and interpreted by case law for its

25  allegations of point source discharges.

26      2.    River Watch's Notice Contains Sufficient Information to Permit Defendant to Identify the
              Location of Alleged  Discharges of Pollutants From a Point Source Without a NPDES

27                Permit

28

1    Defendant claims that River Watch's Notice "fails to identify either the locations or dates of these

2  alleged discharges". "River Watch fails to state where, even generally, the discharges of pollutants

3  originate in or exit from the landfill." (Defendant's P&As,  p. 16).  Again defendant disregards the key

4  language of the CWA notice provision, "sufficient information to permit the <u>recipient</u> to identify"

5  (emphasis added).  The groundwater monitoring reports referenced above identify by number the specific

6  wells where the samples were taken, thereby informing defendant of locations where pollutants are

7  released from the landfill into groundwater which then migrate to adjacent surface waters.  As defendant

8  is the entity most familiar with its self monitoring reports, reference in the Notice letter to specific reports

9  as examples permits defendant to identify specific locations indicated in those reports where leachate is

10 seeping from the landfill into groundwater and the likely subsurface pathways by which the pollutants

11 migrate to adjacent surface waters.

12
13        "When the plaintiff has gathered the information supporting its suit from the defendant's
         own submissions to the relevant state agencies and cites those submissions in the notice
         letter, the plaintiff has satisfied the notice requirement, and a district court possesses
14       subject matter jurisdiction over the case."  *Friends of Frederick Seig Grove #4  v.
         Sonoma County Water Agency*, 124 F. Supp.2d 1161,1169 (N.D. CA 2000)

15

16    By describing the process of subsurface migration and providing examples of groundwater

17 monitoring reports indicating release of pollutants at specific locations, River Watch's Notice enables

18 defendant to identify specific locations identified in other similar reports prepared for defendant.

19        3.   <u>River Watch's Notice Contains Sufficient Information to Permit Defendant to Identify
              Dates of Point Source Discharges Made Without an NPDES Permit</u>
20
21    Defendant contends, "River Watch fails to specify any reasonable date range or the number of

22 occurrences" (Defendant's P&As,  p.16). The Ninth Circuit has determined when deficiencies are

23 ongoing, no specific date need be alleged.

24        "Where BayKeeper alleged an ongoing violation of Tosco's obligation to implement
         best available technology to prevent storm water pollution, no specific dates were needed.
25       See *Southwest Marine*, 236 F.3d 996. ", *Tosco* at 1153,1158.

26    River Watch's Notice alleges ongoing violations – "Due to the hydrological connection between

27 the waste disposal site and waters of the United States, point source discharges occur every day, as

28

1  evidenced by the groundwater monitoring results referenced above." (Declaration of Jerry Bernhaut, Exh

2  A, p.6). As long as defendant continues to operate the landfill with an inadequate system for capturing

3  and containing leachate, point source discharges from the landfill will continue on a daily basis.

4         In *California Sport Fishing Protection Alliance v. City of West Sacramento*, 905 F. Supp 792

5  (E.D. CA 1995), the court held that if specific dates of violations are not given, the Notice should at a

6  minimum provide "a range as to date that is reasonably limited" *id* at 799. Plaintiffs in *California Sport*

7  *Fishing* failed to specify any identifiable range of dates. The court found the reference to the 'previous

8  five years' to be vague *ibid* without any definitive period.   *California Sport Fishing* was a lower court

9  case and decided before *Tosco*. Notwithstanding, River Watch's Notice herein clearly identified a specific

10  time period during which pollutants continuously seeped from the landfill to underlying groundwater and

11  migrated subsurface to adjacent surface waters, "Therefore this Notice of Violations covers all point

12  source discharges occurring from February 6, 2002 through February 6, 2007" ((Declaration of Jerry

13  Bernhaut, Exh A,  p.6).

14         **B.      River Watch's Notice Meets All Requirements of the CWA as Defined by Statute**
           **and Interpreted by Case Law for its Allegations of Stormwater Violations of the**
15         **General Permit**

16         Throughout its brief defendant confuses and conflates River Watch's point source and stormwater

17  allegations.    For example, defendant claims. "Plaintiff generally alleges that Redwood violated the

18  General Permit by: *The alleged failure of the Landfill's leachate collection and removal system*

19  *("LCRS") to prevent 'releases of leachate' from the site. CWA Notice at 3.*  It is not clear whether River

20  Watch is claiming this failure of the LCRS to be a separate and distinct violation of the General Permit,

21  or only the resultant leachate releases. Additionally, the term 'leachate' is used to generally describe

22  leachate emanating from a landfill, and can contain a wide variety of substances that could be deemed a

23  pollutant under the CWA. Finally, no specific factual information, dates or time periods were provided

24  regarding these alleged releases." (Defendant's P&As, p. 7)

25         Despite defendant's alleged confusion, it is clear that the entire discussion of the LCRS on page

26  3 of River Watch's Notice relates to the ability of the LCRS to retain contaminated groundwater on site

27

28

and has nothing to do with stormwater discharges. "As a condition of approval of WDR Order 95-110[2] Redwood agreed to construct a leachate collection and removal system ("LCRS") along the entire perimeter of the landfill site as a necessary means of containing 'contaminated' groundwater on site". (Declaration of Jerry Bernhaut, Exh A, p.3, emphasis added) As to the generality of the term "leachate", the groundwater monitoring reports referenced above identify specific pollutants, as does the sections of the Notice which actually discuss stormwater discharges. Defendant falls into this real or feigned confusion despite the pains River Watch took in the Notice to distinguish the two types of allegations.

> "To prevent any confusion River Watch wishes to make it clear that this second allegation relates to point source discharges rather than non-point source discharges covered by the General Permit. Due to the fact that this landfill is itself a point source, it is discharging from this point source via tributary ground water to San Antonio Creek, the Petaluma River and adjacent wetlands, all waters of the United States."(Declaration of Jerry Bernhaut, Exh. A., p. 6)

River Watch's discussion of stormwater violations on page 5 of the Notice provide clear and sufficient information to satisfy the CWA's notice requirements.

1.    River Watch's Notice Contains Sufficient Information to Permit Defendant to Identify the Activity Alleged to Constitute a Violation of California's General Industrial Storm Water Permit

*NRDC v. Southwest Marine*, 945 F. Supp 1330 (S.D. Cal 1996) ("Southwest I" aff'd 236 F.3d 985 (9th Cir. 2000) ("Southwest II") is directly on point with regard to the specificity necessary for noticing omissions, such as the failure to implement a SWPPP, rather than commissions, such as exceeding a specific effluent limit. "The district court treated Plaintiffs' notice letter as alleging two separate, but related, violations concerning the pollution prevention plans required by its permits and the CWA. The first was Defendant's failure to prepare adequate plans; the second was Defendant's failure to implement adequate plans. . . As the district court correctly noted, the failure to develop and implement pollution prevention plans are violations 'occurring at the facility in general.' *Southwest Marine*, 945 F. Supp. at 1333. Moreover, "the deficiencies in these plans are ongoing, so there is no specific date that can be alleged as the date of the violation." *Southwest II* at 996.

---

[2]WDR 95-110 is a California Waste Discharge Requirement Permit promulgated under the California Porter Cologne Act for discharges to land and is not a NPDES permit.

1     In *Southwest I* the court found that "the [Notice] letter's assertion that the SWPPP violated the

2  General Permit is an adequate statement of the activity that constitutes the violation" *id.* At 1333. As in

3  *Southwest, I*, River Watch has made a factual statement regarding each and every activity it believed to

4  be a violation.

5         "Information available to River Watch indicates that Redwood has not fully developed
          and/or adequately implemented a SWPPP for its combined operation as evidenced by the
6         fact that Redwood has failed to eliminate non-stormwater discharges from its landfill
          operation. For example, total suspended solids and specific conductivity in the stormwater
7         exceed EPA benchmarks, indicating a failure to use Best Management Practices....The
          General Permit prohibits the discharge of storm water to surface or groundwater that
8         adversely impacts human health or the environment. Redwood's discharges contain
          metals, solvents, organics, toxins and nutrients including nitrogen, phosphate and
9         ammonia which adversely impact the environment including the jurisdictional adjacent
          wetlands, San Antonio Creek and the Petaluma River"
10        (Declaration of Jerry Bernhaut, Exh A, p. 5)

11     Defendant argues that River Watch's Notice did not provide a comparable level of information

12  as was provided by the plaintiff's Notice Letter in *Southwest Marine*. Defendant offers the court's review

13  of the contents of plaintiff NRDC's Notice in *Southwest* as an example of adequate notice.

14        "The letter charged among other things, that Defendant failed to prepare an SWPPP that
          complied with the specific requirements of Defendant's storm water permit; it identified
15        the source of the requirement that Defendant prepare an adequate SWPPP; and explained
          the ways in which Defendant's then existing SWPPP did not comply with the storm water
16        permit' <u>Southwest Marine</u> 236 F. 3d at 996" (Defendant's P&As, p.14.)

17     *Southwest I* contains the specific language of Plaintiff NRDC's Notice pertinent to the case at bar.

18        "Additionally, the information currently available to us indicates that Southwest Marine
          and the Port District have violated and continue to violate NPDES General Permit No.
19        CAS 000001 governing stormwater discharges associated with industrial activities in
          California...The General Industrial Permit requirements with which we believe Southwest
20        Marine and the Port District have failed to comply are set forth in Attachment 2 to this
          letter.....Attachment two alleges that Southwest: (1) released stormwater that adversely
21        impacted human health and the environment, or that caused or contributed to a violation
          of any applicable water quality standards; (2) failed to develop and implement a
22        Stormwater Pollution Prevention Plan; and (3) failed to develop and implement a
          monitoring and reporting plan. Plaintiffs provide specific deficiencies in defendant's
23        Stormwater Pollution Prevention and monitoring and reporting plans" *Southwest I at
          1331-1332*

24

25     River Watch's Notice also used the same "information available to us" language to allege that

26  defendant: (1) released stormwater that adversely impacted human health and the environment, and (2)

27  failed to prepare a SWPPP that complied with the requirements of California's General Stormwater

28

1   Permit. River Watch also identified the General Permit as the source of the requirements violated. Neither

2   plaintiff NRDC nor River Watch identified specific points of discharge. "Plaintiffs were not alleging that

3   a particular discharge from a particular pipe on a particular day had violated the CWA. Rather they were

4   alleging that Defendant had failed to prepare and implement plans that were required by its permit".

5   *Southwest II at 996* .

6         Arguably the one respect in which River Watch's Notice was less specific than that of plaintiff

7   NRDC was that River Watch did not "provide specific deficiencies in defendant's Stormwater Pollution

8   Prevention Plan". The specific language describing those deficiencies is not included in either *Southwest*

9   *I or Southwest II.*    River Watch's Notice did identify specific pollutants,  i.e. suspended solids and

10  conductivity, as evidence of defendant's failure to implement Best Management Practices, another

11  requirement of the General Permit. (General Permit No. CAS000001, page 4, Effluent Limitations, B.3)

12  River Watch's Notice also identified a number of pollutants contained in defendant's stormwater

13  discharges as evidence of defendant's failure to implement an adequate SWPPP. River Watch has not

14  had access to defendant's landfill facility to inspect stormwater pollution prevention measures. River

15  Watch's Notice incorporated the General Permit by reference..  The two documents, the Notice and

16  General Permit, taken together, along with defendant's familiarity with its SWPPP and its own operations

17  are sufficient to inform defendant as to the activity alleged to constitute a violation of the General Permit.

18

19         2.    River Watch's Notice Contains Sufficient Information to Permit Defendant to Identify the
            Location  of Violations of California's General Industrial Storm Water Permit

20        Again, it is crucial to bear in mind that the allegations here, as in *Southwest*, are not as to

21  particular discharges. "As the district court correctly noted, the failure to develop and implement

22  pollution prevention plans are violations 'occurring at the facility in general." *Southwest II* at 996 .

23  Failure to develop and implement an adequate SWPPP, and failure to employ proper Best Management

24  Practices, apply to the entire operations at the facility and not to any specific discharge. River Watch's

25  Notice provides a description of the landfill facility and its relation to surrounding waters in some detail.

26  Therefore, identifying the landfill facility is sufficient information as to the location of the alleged

27  violation.

28

1    3.    <u>River Watch's Notice Contains Sufficient Information to Permit Defendant to Identify the
         Dates of Violations of California's General Industrial Storm Water</u>

2

3    "Moreover, the deficiencies in these plans are ongoing, so there is no specific date that can be

4    alleged as the date of the violation." *id.* at 996. The allegations in River Watch's Notice as in *Southwest*,

5    of failure to develop and implement an adequate SWPPP are ongoing, thus no specific dates can be

6    alleged as to the dates of violations. In *Tosco*, 309 F.3d 1153, 1158, the court held that the general date

7    range covered by River Watch's Notice was sufficiently specific regarding stormwater allegations.

8    "Where BayKeeper alleged an ongoing violation of Tosco's obligation to implement best available

9    technology to prevent storm water pollution, no specific dates were needed. See *Southwest Marine*, 236

10    F.3d at 996". *Tosco* at 1158.

11    BayKeeper's Notice in *Tosco* alleged that rain came into contact with uncovered coke piles and

12    then carried contaminants directly into the slough. BayKeeper's Notice provided a list of 190 dates

13    between 1994 and 1999 when the San Francisco Bay received more than one-tenth of an inch of rain.

14    River Watch's Notice herein alleged that from the beginning of its operations, Redwood has discharged

15    stormwater containing pollutants into surrounding waters "during at least every rain event measuring

16    more than one inch as measured by the National Oceanographic and Atmospheric Administration"

17    (Declaration of Jerry Bernhaut, Exh A, p.5) Defendant argues that BayKeeper's Notice in *Tosco* was

18    more specific because it provided at least 190 dates during the general date range when the Bay received

19    more than one-tenth of an inch of rain. River Watch submits that identifying a nationally recognized

20    source of such information is sufficiently specific, so that there was no need for River Watch to reproduce

21    a list of dates in its Notice.

22    "However, requiring a plaintiff to specifically list all of the alleged violations and the
     precise dates of each violation in a notice letter is inconsistent with the balance Congress

23    sought to strike between encouraging citizen enforcement of environmental regulations
     and avoiding burdening the federal courts with a flood of citizen suits. The enforcement,

24    compliance, and settlement functions promoted by the notice requirement are not advanced
     by such a strict interpretation of the CWA notice regulation. Indeed, placing such a burden

25    on prospective plaintiffs would excessively undermine citizen suits and discourage
     alleged violators from complying with the CWA or entering into settlement discussions

26    with plaintiffs." *Friends of Frederick Seig Grove* , at 1169

27

28

1       The other types of discharges alleged in *Tosco* were direct discharges, thus their discussion in

2   defendant's opening brief was not relevant to River Watch's stormwater allegations. This Court should

3   bear in mind that the courts in both *Southwest* and *Tosco* held that allegations of omission, of failure to

4   develop and implement plans and best available practices, are allegations of ongoing violations for which

5   no specific dates are needed.. Arguably the one significant material aspect in which BayKeeper's Notice

6   in *Tosco* was more specific than River Watch's Notice is that BayKeeper described the particular

7   problem of uncovered coke piles subject to discharge in stormwater. This goes to the sufficiency of

8   River Watch's Notice to permit defendant to identify the activity constituting the alleged stormwater

9   related violations, which was discussed above. If this Court finds that River Watch's Notice was

10   sufficient in that respect, then its sufficiency regarding the dates of the violations should follow, based

11   on the above analysis.

12   **IV. CONCLUSION**

13       In light of the above analysis, River Watch submits that its Notice letter meets all the

14   requirements of 40 C.F.R. § 135.3(a) and respectfully requests this Court deny defendant's Motion for

15   an Order Dismissing the Complaint.

18   DATED: November 29, 2007        Respectfully submitted,

20   *Jerry Bernhaut*

21   JERRY BERNHAUT
      Attorney for Plaintiff
      NORTHERN CALIFORNIA RIVER WATCH