1  Jack Silver, Esquire SBN# 160575
   Law Office of Jack Silver
2  Jerry Bernhaut, Esquire SBN# 206264
   Post Office Box 5469
3  Santa Rosa, California 95402-5469
   Telephone: (707) 528-8175
4  Facsimile: (707) 528-8675
   lhm28843@sbcglobal.net
5
   Attorneys for Plaintiff
6  Northern California River Watch

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 NORTHERN CALIFORNIA RIVER          CASE NO.   C07-05058 WHA
   WATCH, a non-profit corporation,
12                                    **DECLARATION OF JERRY BERNHAUT
                 Plaintiff,           IN SUPPORT OF OPPOSITION TO
13      v.                            MOTION FOR AN ORDER DISMISSING
                                      THE COMPLAINT**
14 WASTE MANAGEMENT INC.,
   REDWOOD LANDFILL  INC. and DOES    Date:        December 20, 2007
15 1-10, Inclusive,                   Time:        8:00 a.m.
                                      Ctrm:        9, 19th Floor
16               Defendants.          Judge:       Hon. William H. Alsup

17 _____/  Complaint Filed: October 1, 2007

18

19
       I, Jerry Bernhaut, declare as follows:
20
       1.  I am an attorney duly admitted to practice before all the Courts of the State of California, and
21
   an attorney of record herein for Plaintiff NORTHERN CALIFORNIA RIVER WATCH.  I have personal
22
   knowledge of all matters stated herein and, if called as a witness, could and would testify competently
23
   thereto.
24
       2.  Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's Notice of Violations and
25
   Intent to File Suit Under the Clean Water Act dated February 6, 2007.
26
       3.  Attached hereto as **Exhibit B** is a true and correct copy of an aerial photograph of the
27
   Redwood Landfill site downloaded from Google Maps on November 25, 2007.
28

C07-05058 WHA
Declaration of Jerry Bernhaut in Support of Opposition to Motion for an Order Dismissing the Complaint       1

1    4.  A prior case filed by Northern California River Watch against Redwood Landfill, Inc. in

2    August of 2003 entitled *Northern California River Watch v. Waste Management, Inc., Redwood Landfill,*

3    *Inc., et al* Case No. C03-03991 SC, was dismissed in December of 2003 at the request of other

4    environmental groups opposing the expansion Environmental Impact Report at the landfill site in Marin

5    County.  Those groups were of the opinion that the lawsuit filed as Case No. 03-03991 SC might distract

6    from their action.  These groups have been successful thus far in their effort to defeat the expansion.

7         I declare under penalty of perjury under the laws of the State of California that the foregoing is

8    true and correct, and that this declaration was executed on November 29, 2007, at Santa Rosa,

9    California.

10

11

12    JERRY BERNHAUT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone 707-528-8175      Fax 707-528-8675
lhm28843@sbcglobal.net

February 6, 2007

**VIA CERTIFIED MAIL /
RETURN RECEIPT REQUESTED**

Owner/Managing Agent
Waste Management, Inc.
Redwood Landfill, Inc.
P.O. Box 793
Novato, CA 94948

*RE: Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Owner/Site Manager:

      I am writing this Notice of Violations on behalf of Northern California River Watch ("River Watch") to express its great concern regarding a threat to Marin wetlands, San Antonio Creek, the Petaluma River and San Francisco Bay by the operations of Redwood Landfill, Inc. ("Redwood") located at or near 8950 Redwood Highway North, Novato, California. Currently, the landfill receives most of Marin County's waste and sludge as well as waste from numerous sites outside of Marin County. Redwood is on Bay mud, situated adjacent to San Antonio Creek which feeds into the Petaluma River. Groundwater in and around the landfill is hydrologically connected to adjacent wetlands and San Antonio Creek. The water table is often above the bottom of the landfill allowing toxic materials from the mass of waste to leak into adjacent wetlands, San Antonio Creek, the Petaluma River, and hence into San Francisco Bay.

      River Watch believes that preferential pathways within the Bay mud under the landfill allow accelerated release of waste into groundwater and the adjacent waters of the United States. Redwood's Final EIR (page 3.4-30) acknowledges the likelihood of migration of leachate into the sand lenses in the Bay mud beneath the landfill. Redwood's Waste Discharge Requirements, WDR Order 95-110 (pages 5-6) identifies sand and silty sand channels within Bay mud beneath the landfill as areas of increased permeability and likely preferential groundwater flow pathways to the hydrologically connected surface waters adjacent to the Novato operations site.

Redwood is the last, bay-front landfill remaining in operation in the Bay Area. All others, including the Contra Costa landfill have closed.

Redwood is located in flat, low-lying, drained marshlands along the western margin of the Petaluma Valley and adjacent to hills of the Coast Ranges west of the site. The site contains and is surrounded by a complex network of natural and manmade surface water bodies including ditches, ponds, creeks, and sloughs. The tidally influenced San Antonio Creek, Mud Slough, West Slough, and South Slough surround the site. These surface waters, sloughs are tributaries of San Antonio Creek which flows to the Petaluma River and eventually into San Pablo Bay, all waters of the United States.

San Antonio Creek, which forms the northern and eastern boundary of the site, drains an area of approximately 33 square miles northwest of the site. The Creek is approximately 120 to 230 feet wide near the landfill levees. The bottom elevation of the Creek varies from 5 to 12 feet below mean sea level ("msl"). The elevation of the tidal mud flats through which the Creek flows east of the site, ranges from approximately 2 to 3 feet above msl. The estimated 100-year flow for San Antonio Creek is 5,900 cubic feet per second. The West Slough, on the site's western border, is approximately 10 to 15 feet wide and has a bottom elevation of 2 to 15 feet below msl. The South Slough, on the site's southern border, is approximately 10 feet wide. Its bottom elevation has not been surveyed.

The Petaluma River, San Antonio Creek, adjacent wetlands, sloughs and mudflats east of the site are subject to tidal influence. Occasionally the sloughs overflow due to heavy rains or tidal peaks resulting in widespread, shallow flooding of the marshlands located east of the site. The Oxbow area and southern third of the site, where sludge processing takes place and the new administrative facilities are planned, are within the 100-year flood plain of the Petaluma River and San Antonio Creek. As shown on Federal Emergency Management Agency Flood Insurance Rate Maps (1982 and 1991), the base flood elevation associated with the 100-year event is 6 to 7 feet. According to Redwood's Report of Waste Discharge (1994), the highest tide recorded at the confluence of the Petaluma River and San Antonio Creek was 6.25 feet above msl; however, this elevation was likely exceeded during storm events in 1995, 1998, 2003 and 2004.

Local residents once harvested and consumed fish from the Petaluma River such as salmon, bass, and anchovies. Shellfish such as crabs in addition to numerous birds species including the great blue heron and ducks continue to rely upon the Petaluma River, San Antonio Creek and adjacent wetlands for migration and foraging purposes. The Petaluma River is now listed as impaired for sediment and nutrients under Clean Water Act § 303(d). Redwood's activities create discharges of nutrients to the Petaluma River. Beneficial uses of San Antonio Creek and Mud Slough bordering Redwood are estuarine and wildlife habitat.

Redwood consists of three separate and distinct operations:

1)    Class III landfill (SIC 4953);
2)    Composting facility (SIC 5093 and 4226); and
3)    Class II temporary sludge storage, disposal, and processing facility (SIC 4953).

All of these operations are located on approximately 600 acres in northern Marin County, California. The physical address is 8950 Redwood Highway North, Novato, California. The site is further described in WDR Order # 95-110 issued from the Regional Water Quality Control Board, San Francisco Region. The site and operations on site are also discussed in greater detail in *Redwood Landfill Solid Waste Facilities Permit Revision Draft Subsequent Environmental Impact Report* (July 2003).("Redwood DEIR")

The landfill, composting, sludge storage, disposal, and processing sites which Redwood owns and operates sit in converted wetlands. The sites are surrounded by a complex network of natural and manmade surface water bodies including San Antonio Creek, Mud Slough, West Slough, and the Petaluma River. These surface waters flow into San Pablo Bay. All of these bodies of water, including the wetlands, are waters of the United States.

There are 32 identified storm water outlets on the perimeter of the site. According to WDR Order # 95-110, Redwood's leachate pond is lined. However, there is no indication of the liner material. Many lined ponds still experience significant leakage. There is no indication in the records of water balance data for the leachate pond.

As a condition for approval of WDR Order # 95-110, Redwood agreed to construct a leachate collection and removal system ("LCRS") along the entire perimeter of the landfill site as a necessary means of containing "contaminated" groundwater on site. In an email from Alan Friedman of the Regional Water Quality Control Board, San Francisco Bay Region, dated July 01, 2004, Mr. Friedman expressed concern regarding the ability of Redwood's LCRS to capture all the leachate generated at the site. Mr. Friedman called for specific measures to demonstrate the effectiveness of the LCRS, including updated leachate level data in the landfill and updated water balance data for the landfill. River Watch would add updated water balance data for the leachate pond. In response to concerns raised in Mr. Friedman's email, Redwood committed to continue evaluating hydraulic characteristics of leachate at the site and to collect water balance data (September 1, 2004 letter from Mark Verweil). However, data from leachate monitoring wells was not used in preparing a groundwater contour map for the site based on several factors including the alleged degree of separation between Bay mud groundwater and leachate (First Semiannual 2006 Monitoring Report, p.4). This separation is alleged despite the fact there are areas in the landfill where refuse is below groundwater level.

Further doubts are raised regarding the effectiveness of the LCRS by Redwood's failure to integrate the LCRS trench with the perimeter levee, as originally proposed; and, by the failure of Redwood to key the trench into Bay mud along the entire perimeter of the site. . The trench bordering Area E is not keyed into Bay mud because waste fill in the area is deeper than the trench's design depth of -5.5 feet msl, again raising doubts about the separation of leachate from groundwater. Master Response 13 of the Final EIR responds to these doubts with the dubious claim that as long as a maximum fluid level of -1foot msl is maintained in the LCRS trench, a gravity based hydraulic barrier would be maintained preventing off-site leachate migration. Violations detailed below clearly show that Redwood's LCRS is not succeeding in preventing releases of leachate from the site. Redwood has no NPDES permit allowing it to discharge pollutants from a point source to any waters of the United States.

Discharges by Redwood from its sites to adjacent wetlands and San Antonio Creek occur both directly and indirectly. Direct and unpermitted discharges of polluted storm water occur to intermittent drainages, wetlands, sloughs, and San Antonio Creek - all tributaries of the Petaluma River, all waters of the United States. Discharges also occur due to the fact that the site is hydrologically connected to the adjacent wetlands and San Antonio Creek. Drainages and pollutants move subsurface to the surface waters via tributary groundwater acknowledged above as being hydrologically connected to surface waters.

Redwood's own self monitoring reports filed with the Regional Water Quality Control Board, San Francisco Region show that the groundwater in the area of these sites is contaminated by Redwood's activities. Present in amounts that exceed State of California Minimum Contaminant Levels as well as historic background limits are ammonia (Annual Reports 2005 and 2006), iron (Annual Report 2005, issued May 23, 2006), acetone and carbon disulfide (First Semiannual Groundwater Monitoring Report of 2006). Some of these substances are known to be toxic to humans and the environment in very small amounts – parts per billion. Recurrent ammonia detections raise concerns by regulators regarding the ability of Redwood's leachate management system to control leachate migration (Friedman email, July 1, 2004).

Under Redwood's Discharge Monitoring Program, Part A, Section F., Reports To Be Filed With The Board - when an initial sample showing a statistically significant difference between the sample result and a WQPS is confirmed by a resampling, the discharger must submit to the Board an amended Report of Waste Discharge to establish an Evaluation Monitoring Program. Although there are a number of confirmed, statistically significant exceedances of a WQPS in Redwood's groundwater monitoring reports, Redwood has always opted to offer some excuse rather than complying with the protocol for reporting a violation.

In the 2005 Annual Report, (pages 12) an Optional Demonstration Report ("ODR") is quoted, explaining an apparent violation as a natural background occurrence: "the presence of ammonia (TKN) in groundwater samples is not unusual from the standpoint of its natural formation and accumulation within organic rich, fine-grained reducing sediments". In a Resampling Result for Volatile Organic Compound Detection, First Semiannual 2006 Groundwater Monitoring Report, detections of acetone and carbon disulfide were explained as the result of a laboratory contaminant and possible matrix interference. There was also a reference to an ODR completed in 2003 which determined that earlier detections of carbon disulfide were from a natural source, i.e. "Bio-slime" observed within the well bore, and not related to a release from the landfill. This is questionable since volatile organic carbons are strictly man made. There are numerous other examples in Redwood's Monitoring Reports of confirmed exceedances explained away as the result of sampling contamination or bias, or natural background levels, begging the question when would Redwood recognize a resampling result confirming a statistically significant exceedance of a WQPS as an indication of a leachate release from the landfill?

River Watch hereby places Redwood on notice that following the expiration of sixty (60) days from the date of this Notice of Violations, River Watch intends to bring suit against Redwood in Federal District Court for the following:

1.    Redwood's failure to comply with the terms and conditions of California's General Industrial Storm Water Permit for Industrial Storm Water Discharges (WDID 228S003380), National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ and Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12-DWQ) issued pursuant to § 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p) ("General Permit"), for Redwood's un-permitted discharges of contaminated storm water, its discharges of non-storm water pollutants from the landfill site and composting operations in violation of effluent limitations; and, Redwood's violations of the procedural requirements of the General Permit.

For stormwater discharges allowed under CWA § 402(p) the General Permit requires dischargers in operation prior to October 1, 1992, to have developed and implemented a Storm Water Pollution Prevention Plan ("SWPPP") no later than that date. Redwood continues to operate subsequent to October 1, 1992 and is required to develop and properly implement a SWPPP for its combined landfill, sludge and composting operations.

Information available to River Watch indicates that Redwood has not fully developed and/or adequately implemented a SWPPP for its combined operation as evidenced by the fact that Redwood has failed to eliminate non-stormwater discharges from its landfill operation.    For example, total suspended solids and specific conductivity in the stormwater exceed EPA benchjmarks, indicating a failure to utilize Best Management Practices. Redwood has been and will continue to be in violation of the Clean Water Act every day it discharges unauthorized non-stormwater and every day it discharges stormwater containing pollutants identified above without adequately implementing a SWPPP for the landfill site.

The Clean Water Act prohibits storm water discharges without a permit (33 U.S.C. § 1342; 40 C.F.R. § 122.26). The General Permit prohibits the discharge of material other than storm water to waters of the United States which causes or threatens to cause pollution, contamination, or nuisance.  The General Permit prohibits the discharge of storm water to surface or groundwater that adversely impacts human health or the environment.    Redwood's discharges contain metals, solvents, organics, toxins and nutrients including nitrogen, phosphate and ammonia which adversely impact the environment including the jurisdictional adjacent wetlands, San Antonio Creek and the Petaluma River.

Since the beginning of operations, Redwood has discharged stormwater containing pollutants and non-stormwater pollutants from its landfill site into adjacent wetlands, San Antonio Creek and/or their tributaries, in violation of the General Permit, during at least every rain event over 1 inch as measured by the National Oceanographic and Atmospheric Administration.  These violations of the Clean Water Act are ongoing. Redwood will continue to be in violation of the General Permit each day it discharges non-storm pollutants and contaminated storm water from its landfill, sludge and composting operation which cause or threaten to cause pollution, contamination or nuisance or which adversely impacts human health or the environment.

2.    The Clean Water Act regulates the discharge of pollutants into waters of the United States.   The statute is structured in such a way that any discharge of pollutants is prohibited with the exception of several enumerated statutory exceptions.  One such exception authorizes a polluter who has been issued a NPDES permit to discharge designated pollutants at certain levels subject to certain conditions.    The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the 33 U.S.C. § 1311(a) prohibition.  Without a NPDES permit, all unauthorized point source discharges to waters of the United States are illegal.  Redwood has no NPDES permit for discharging pollutants other than storm water to waters of the United States,  including the wetlands surrounding its landfill operation.

> Redwood's continuing violations of effluent standard or limitations, permit condition or requirement and/or orders issued by the Administrator or a State with respect to such standard or limitation under CWA § 505(a)(1), CWA § 402(b) and CWA § 301(a) the Code of Federal Regulations, and the Basin Plan, are exemplified by Redwood's illegally discharging to waters of the United States without a NPDES permit.

> To prevent any confusion River Watch wishes to make it clear that this second allegation relates to **point source** discharges rather that **non-point sources** discharges covered by the General Permit.   Due to the fact that the landfill is itself a point source, it is discharging from this point source via tributary ground waters to San Antonio Creek, the Petaluma River and adjacent wetlands, all waters of the United States.

> Due to the hydrological connection between the waste disposal site and waters of the United States, point source discharges occur every day, as evidenced by the groundwater monitoring results referenced above.  Therefore this Notice of Violations covers all point source discharges occurring from February 6, 2002 through February 6, 2007.  Redwood has violated the Clean Water Act, the Basin Plan and the Code of Federal Regulations for discharging pollutants into waters of the United States without a NPDES permit. Redwood has done little or nothing to abate these violations. River Watch believes these violations are ongoing and continuing.

> Pursuant to § 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), Redwood's operations are prohibited by law.  Beneficial uses of the Petaluma River, San Antonio Creek and their tributaries and wetlands in the vicinity of Redwood's landfill and composting operations are being affected in a prohibited manner by these violations.  Redwood's landfill and composting facilities are point sources, the discharges from which contribute to violations of applicable water quality standards.

Redwood, owner and operator of the landfill site is a wholly-owned subsidiary of USA Waste of California, Inc., a holding company for the California holdings of Waste Management Inc.

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California.   River Watch is organized under the laws of the State of California. Its

address is 6741 Sebastopol Avenue Ste. 140 Sebastopol, CA 95472. Phone / Fax: (707) 824-4372. Email US@ncriverwatch.org.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175 Fax. 707-526-8675
lhm28843@sbcglobal.net

River Watch believes this Notice of Violations sufficiently states grounds for filing suit. At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under § 505(a) of the Clean Water Act against Redwood for the violations as described herein.

During the notice period, River Watch is willing to discuss effective remedies for the violations set forth in this Notice of Violations. However, if Redwood wishes to pursue such discussions in the absence of litigation, it is suggested that those discussions be initiated within the next twenty (20) days so that they may be completed before the end of the notice period. River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Sincerely,

Jack Silver

cc:

Northern California River Watch
6741 Sebastopol Avenue, Suite 140
Sebastopol, CA 95472

Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency Region 9
75 Hawthorne Street
San Francisco, CA 94105

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Jordan Smith, President
and Registered Agent For Service
Redwood Landfill, Inc.
8950 Redwood Highway North
Novato, CA 94945

C T Corporation System
Registered Agent
USA Waste of California, Inc.
818 West 7th Street
Los Angeles, CA 90017

USA Waste of California, Inc.
Waste Management, Inc.
Corporate Offices
1001 Fannin, Suite 4000
Houston, TX 77002

# EXHIBIT B



