John Lynn Smith (SBN 154657)
(E-Mail: jlsmith@reedsmith.com)
Eric M. McLaughlin (SBN 200867)
(E-Mail: emclaughlin@reedsmith.com)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   (415) 543-8700
Facsimile:    (415) 391-8269

Attorneys for Defendant
REDWOOD LANDFILL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WASTE MANAGEMENT INC., REDWOOD LANDFILL INC. and DOES 1-10, inclusive,<br><br>Defendants. | No.: C-07-5058 WHA<br><br>**DECLARATION OF ANDREW M. KENEFICK IN SUPPORT OF DEFENDANT REDWOOD LANDFILL, INC.'S MOTION TO DISMISS**<br><br>Date:         December 20, 2007<br>Time:         8:00 a.m.<br>Place:        Courtroom 9, 19th Floor<br>Compl. Filed: October 1, 2007<br>Trial Date:   None Set<br><br>Honorable William Alsup |

I, Andrew M. Kenefick, declare and state as follows:

1. I am Senior Legal Counsel for defendant Redwood Landfill, Inc. ("Redwood"). I know the facts set forth herein from my own personal knowledge. If called upon to testify in this action as to facts stated in this declaration, I could and would competently testify thereto.

2. I have reviewed *Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for an Order Dismissing Complaint* and the *Declaration of Jerry Bernhaut in Support of Opposition to Defendant's Motion for an Order Dismissing Complaint.*

3. On behalf of Redwood Landfill, I responded to River Watch's February 6, 2007 *Notice of Violations and Intent to File Suit Under the Clean Water Act* (attached as Exhibit A to *Bernhaut Declaration*) by sending a letter dated March 9, 2007 explaining that the Notice was not adequate and therefore Redwood could neither assess the merits of River Watch's claims nor determine what action to take to correct any alleged violations. A true and correct copy of that letter is attached hereto as Exhibit 1.

4. After sending the March 9th letter, Redwood agreed to pursue confidential discussions with River Watch in order to answer any questions concerning the March 9th letter to educate River Watch about the Landfill, and to correct River Watch's apparent misunderstanding that the Landfill is discharging pollutants to the adjacent surface waters.

5. To that end, Redwood Landfill's District Manager, its Director of Groundwater Protection, and I met in person with Mr. Jerry Bernhaut and Mr. Jack Silver representing River Watch on April 27, 2007 at the Redwood Landfill. At the start of that meeting, all participants agreed that the discussions were intended to be confidential negotiations.

6. Notwithstanding the parties' agreement as to the confidentiality of the April 27th meeting, River Watch throughout its Opposition improperly refers to, discloses, and indeed mischaracterizes some of those confidential discussions. Plaintiff's Opposition at 1 & 3-4.

7. River Watch also includes in its Opposition an improper characterization of Redwood's willingness to provide River Watch with all documents that it requested and how the confidential discussions ended without resolution, thereby resulting in this lawsuit. Plaintiff's Opposition at 4.

8. River Watch's references to these confidential discussions directly contravene the understanding between the parties that the discussions were confidential.

\* \* \*

1  I declare under penalty of perjury under the laws of the United States that the foregoing is
2  true and correct. Executed on December 5, 2007, in Seattle, Washington.

                                          */s/ Andrew M. Kenefick*
                                          Andrew M. Kenefick

REED SMITH LLP
A limited liability partnership formed in the State of Delaware





**ANDREW M. KENEFICK**
Senior Legal Counsel, Western Group
 Admitted in Washington
Direct (206) 264-3062   Fax (866) 863-7961
akenefick@wm.com

**WASTE MANAGEMENT**
801 2nd Avenue
Suite 614
Seattle, WA 98104
(206) 264-8207
(206) 264-8212 Fax

March 9, 2007

**VIA REGISTERED MAIL AND FAX (707) 528-8675**

Jack Silver, Esq.
Law Offices of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469

RE:   Northern California River Watch's Notice of Violation and Intent to File Citizen Suit Under the Federal Clean Water Act

Dear Mr. Silver:

On behalf of Redwood Landfill, Inc. ("Redwood"), I am responding to your "60-day notice" letter dated February 6, 2007 ("Notice"). As discussed more specifically below, the Notice makes a number of allegations but provides insufficient specific information to allow us to identify the nature, cause, or locations of the alleged violations, when the violations occurred, and what permit conditions, limitation, or standards were allegedly violated. As a result, the Notice has not provided Redwood with an opportunity to cure the alleged violations, if any, and as a consequence violates both the letter and the intent of the notice provisions of the Clean Water Act.

To enable Redwood to adequately respond to River Watch's allegations, we will need more specific information to assess the merits of the alleged violations and, if appropriate, undertake corrective actions to address them or otherwise have any meaningful discussions with River Watch in the hopes of resolving its claims.

Nonetheless, based on the limited information you provided, we address River Watch's alleged "violations" below and also identify the specific information that we will need before we can have a meaningful discussion about River Watch's claims. I hope that I have addressed each allegation. If I have not, it is because I have failed to appreciate the nature of the allegation or have understood the allegation to be subsumed within others; it is not because Redwood by any measure agrees with your allegation. Furthermore, nothing in this letter should be construed as a waiver of any defense available to Redwood under the federal Clean Water Act or any other applicable law, regulation, or rule.

March 9, 2007

## 1. Redwood Is In Compliance With The Terms and Conditions Of The General Permit

### a. The Notice Fails To Sufficiently Identify The Alleged Unlawful Stormwater Discharges

The Notice alleges that Redwood's stormwater discharges "contain metals, solvents, organics, toxins and nutrients including nitrogen, phosphate and ammonia which adversely impact the environment including the jurisdictional adjacent wetlands, San Antonio Creek and the Petaluma River." Notice at 5. Redwood has worked very closely with the Regional Water Quality Control Board to ensure that our stormwater discharges comply with California's General Storm Water Permit. Redwood has developed a Storm Water Pollution Prevention Plan ("SWPPP") and monitors the site through the inspection and monitoring program described in the Permit. As allowed in the Permit, the facility utilizes storm water discharge sample analysis to continually evaluate best management practices for purposes of pollution prevention. Thus, Redwood does not believe that its stormwater discharges adversely impact the environment or violate any applicable water quality limit or permit requirement.

With respect to your allegation of stormwater discharges of certain pollutants, the Notice is insufficient. You claim that the Landfill is discharging "solvents", "toxins", and "organics" yet you fail to identify the compounds, when these alleged discharges occurred, where they occurred, or what effluent standard or limitation you claim is being violated. Notwithstanding that a generic reference to "solvents", "toxins", and "organics" (presumably meaning "organic compounds"?) is wholly insufficient to identify what pollutants you mean, Redwood has no confirmed sampling data showing discharges of materials that might even arguably fall into these broad categories. You will need to provide us with more information for us to respond further to this allegation. You also assert unlawful discharges of "metals" and certain nutrients. Again, you have not identified when or where these discharges occurred, what standards or effluent limits are allegedly being violated, or, with respect to the "metals", what specific metals you are claiming.

Without this information, Redwood cannot ascertain the validity of River Watch's allegations or how it can possibly remedy the alleged violation. In addition, the Notice alleges unlawful discharges of stormwater containing pollutants and non-stormwater pollutants from Redwood's landfill site into adjacent wetlands, San Antonio Creek and/or their tributaries, during "at least every rain event over 1 inch." Id. The Notice also alleges that these violations are ongoing. Id. This allegation is insufficient to inform Redwood as to when these alleged discharges occur or for how they have allegedly been occurring. Such a blanket allegation "at least every rain event over 1 inch" sounds like utter speculation, rather than the kind of factually founded assertions necessary for adequate notice under the Clean Water Act. Moreover, the Notice fails to provide information on the location of these alleged discharges or the permit conditions, limitation, or standards that are allegedly being violated. Thus, the Notice does not provide the requisite specificity required for Clean Water Act notices.

The Notice also alleges "total suspended solids and specific conductivity in the stormwater exceed EPA benchmarks." Id. Again, this allegation does not identify the date or

March 9, 2007

location of these alleged stormwater discharges nor does it identify what effluent limit or standard is allegedly being violated. Even if a generalized reference to "EPA benchmarks" were sufficiently specific, the exceedance of a benchmark is not a violation of a "standard or limitation" under Section 505(a)(1) of the Clean Water Act. *See* 65 Fed. Reg. at 64816 (Oct. 30, 2000). Again, this lack of information makes the notice regarding this allegation insufficient to allow Redwood to identify the alleged problem and attempt to respond.

      b. <u>The Notice Fails To Sufficiently Identify The Alleged Non-Stormwater Discharges</u>

The Notice alleges that Redwood discharges non-stormwater pollutants from the landfill site and composting operations in violation of effluent limitations. <u>Id.</u> Redwood does not discharge non-stormwater to navigable waters of the United States.

Rather, non-stormwater or "contact" water from Redwood's various operations is collected and discharged to the facility's leachate collection pond. The leachate collection pond does not discharge to navigable waters.

While you have alleged that the Redwood Landfill has unlawfully discharged non-storm water containing pollutants, you have not identified any specific date (or even a reasonable range of dates), the location of such violations or the permit conditions, limitations or standards that are allegedly being violated. As you should know, Redwood Landfill's property is approximately 600 acres and the landfill operations occur on approximately 420 of those acres. In addition, Redwood's records contain no evidence of any discharges of pollutants that exceed permitted limits. Without specific information that describes the non-stormwater discharge violations that form the basis for River Watch's allegations, it is impossible for Redwood to provide any meaningful response to the Notice, other than what is set forth above.

      c. <u>The Notice Fails To Sufficiently Identify The Alleged Violations Of The "Procedural Requirements" Of The General Permit</u>

The Notice alleges that Redwood has "not fully developed and/or adequately implemented a SWPPP" for its combined landfill, sludge and composting operations. <u>Id.</u> In support of this allegation, the Notice asserts that Redwood has failed to eliminate non-stormwater discharges from its landfill operation and that total suspended solids and specific conductivity in the stormwater exceed EPA benchmarks indicating a failure to utilize Best Management Practices. <u>Id.</u> These allegations are addressed above.

The allegation that the Landfill is in violation because it has not fully developed "and/or" adequately implemented a SWPPP" is woefully deficient. The Notice fails to allege which sections of the General Permit Redwood did not comply with or are not addressed in the SWPPP. In addition, you fail to explain how Redwood has not adequately developed "and/or" implemented the SWPPP. In fact, the Landfill has a SWPPP and properly implements it. Redwood is therefore at a loss to understand the basis for River Watch's bare allegation.

March 9, 2007

We must again request that River Watch provide information to Redwood as required by the Clean Water Act notice provision that will help us understand why River Watch believes that Redwood has not fully developed "and/or" adequately implemented a SWPPP. And again, to the extent that River Watch is alleging that Redwood's SWPPP is inadequate, Redwood requests River Watch to explain how it is inadequate.

### 2. The Notice Fails To Provide Sufficient Information To Determine The Basis Of River Watch's Allegations That Redwood Is Discharging Pollutants Other Than Storm Waters To Waters Of The United States Without A NPDES Permit

River Watch alleges that Redwood has violated the Clean Water Act, the Basin Plan and the Code of Federal Regulations for discharging pollutants into waters of the United States without a NPDES permit. Notice at 6. River Watch alleges that point source discharges occur every day as evidenced by the groundwater monitoring results and that the Notice covers all point source discharges occurring from February 6, 2002 through February 6, 2007. Id. As you should know, this general time frame allegation is insufficient under relevant Clean Water Act law.

As River Watch knows, Redwood has a valid NPDES permit – its General Permit. To the extent River Watch alleges a violation of that permit, those allegations have been addressed above. To reiterate my earlier response, Redwood cannot make any assessment of such claim without specific information that identifies the location and date of such violations and the permit conditions, standards or regulations that have allegedly been violated.

In addition, the Notice alleges that Redwood's own self-monitoring reports show groundwater concentrations of the following constituents above background levels: ammonia, iron, acetone and carbon disulfide. Redwood closely adheres to Title 27 of the California Code of Regulations with respect to sampling, analysis and reporting. None of these four constituents listed have been determined to be present in groundwater due to a release from the Landfill. In fact, iron and ammonia have been determined to occur naturally in regional concentrations. Indeed, a comprehensive analysis was conducted to address ammonia in the vicinity of Redwood and the RWQCB agreed with the results after the July 2004 date referred to in the Notice. Acetone is a common lab and field contaminant and is rarely verified in re-sampling activities at most facilities. In addition, most carbon disulfide detections are a result of natural or biogenic activity. Notably, the Landfill's WDRs recognize that groundwater quality is naturally poor throughout the region as a result of high mineralization and saline water influences, and therefore elevated concentrations of these kinds of parameters are not indicative of landfill impacts on water quality. E.g., WDR Order No. 95-110, ¶ 19. Accordingly, Redwood is not aware of any data indicating that the Landfill operations have resulted in unlawful discharges via groundwater. Certainly, none of the data collected from inception of the current monitoring program suggests there has ever been a problem, let alone an ongoing problem as asserted.

In support of this alleged violation, River Watch asserts that this allegation relates to point-source discharges and alleges that the landfill as well as the composing facilities, are each "point sources." However, neither the Landfill nor the composting facilities are themselves "point sources" so this allegation has no merit. See 33 U.S.C. § 1362(14). We are also confused by your statement that the General Permit covers non-point sources. Notice at 6. The General

March 9, 2007

Permit – indeed all NPDES permits – applies to point sources only, not non-point sources. *See* 33 USC § 1362(12) ("discharge" defined as the addition of a pollutant from "any point source"); 33 USC § 1342 (NPDES permits); 33 USC § 1329 (non-point source management programs).

In addition, although River Watch generally refers to the Landfill and composting facilities as the locations of the alleged discharges, you and River Watch know how large of an area these facilities cover. Thus, more specific identification of the location of the discharges is necessary to enable Redwood to adequately assess, respond and correct the alleged violations, if warranted.

\*   \*   \*

As you know, on behalf of River Watch, you sent a 60-day notice letter pursuant to the Clean Water Act to Redwood about four years ago containing nearly identical allegations. When Redwood received that letter, it responded in a fashion quite similar to this letter because then, as now, River Watch's notice letter did not satisfy the notice requirements mandated by the Clean Water Act. As you will remember, River Watch never supplemented its allegations in response to Redwood's letter, filed suit in federal court and then dismissed the case in response to Redwood's motion to dismiss the complaint. After all of that, Redwood is disappointed to see River Watch again failing to comply with the Clean Water Act's notice provisions and, as such, failing to grant Redwood its statutory right to assess and possibly correct the alleged violations.

With that said, Redwood takes any allegations that the Landfill is violating environmental laws very seriously. We have again seriously considered River Watch's claims; however, the information provided in the Notice is once again woefully inadequate to provide Redwood with the required reasonable notice of the alleged violations. Without more information and specificity, it is impossible for Redwood to assess the merits of River Watch's claims or to take any action necessary to correct any purported violation should River Watch's allegations have merit. While we would be willing to discuss this matter with you, we feel that it would be more productive if you could provide us with the kinds of details that the law requires and that we have identified as lacking in your February 6, 2007 letter. Thank you.

Sincerely,

*[signature: Andrew M. Kenefick]*

Andrew M. Kenefick