United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORTHERN CALIFORNIA RIVER WATCH,

Plaintiff,

v.

REDWOOD LANDFILL INC.,

Defendant.
_______________________________________/

No. C 07-05058 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

In this Clean Water Act action, defendant Redwood Landfill, Inc. moves to dismiss the complaint of plaintiff Northern California River Watch. The complaint alleges that defendant violated its permits and illegally discharged waste into the navigable waters of the United States. Defendant moves to dismiss on the ground that this Court lacks subject-matter jurisdiction because plaintiff failed to comply with the mandatory notice requirements of the Clean Water Act. For the reasons stated below, the motion to dismiss is **DENIED**.

## STATEMENT

Plaintiff Northern California River Watch is a non-profit organization dedicated to protecting and restoring the surface and subsurface waters of Northern California. Defendant Redwood Landfill, Inc. owns and operates waste and composting facilities in Marin County, California. Located on six hundred acres of land, the landfill is surrounded by various bodies of water, such as San Antonio Creek, Mud Slough, West Slough, and the

United States District Court
For the Northern District of California

Petaluma River. Plaintiff accuses defendant of illegally discharging pollutants into the groundwater and adjacent navigable waters of the United States.

On February 6, 2007, plaintiff sent defendant its notice of intent to file suit under the Clean Water Act. Plaintiff's notice alleged that Redwood (i) violated the terms of the General Industrial Storm Water Permit ("GISWP") and (ii) discharged pollutants in the absence of a National Pollution Discharge Elimination System ("NPDES") permit (Compl. Exh. at 5–6).

With respect to the GISWP violation, the notice stated in relevant part (at 5):

> [T]he General Permit requires dischargers in operation prior to October 1, 1992 to have developed and implemented a Storm Water Pollution Prevention Plan ("SWPPP") no later than that date. Redwood continues to operate subsequent to October 1, 1992 and is required to develop and properly implement a SWPPP for its combined landfill, sludge and composting operations.
>
> Information available to River Watch indicates that Redwood has not fully developed and/or adequately implemented a SWPPP for its combined operation as evidenced by the fact that Redwood has failed to eliminate non-stormwater discharges from its landfill operation. For example, total suspended solids and specific conductivity in the stormwater exceed EPA benchmarks, indicating a failure to utilize Best Management Practices. Redwood has been and will continue to be in violation of the Clean Water Act every day it discharges unauthorized non-stormwater and every day it discharges stormwater containing pollutants identified above without adequately implementing a SWPPP for the landfill site . . .
>
> The General Permit prohibits the discharge of material other than storm water to waters of the United States which causes or threatens to cause pollution, contamination, or nuisance. The General Permit prohibits the discharge of storm water to surface or groundwater that adversely impacts human health or the environment. Redwood's discharges contain metals, solvents, organics, toxins and nutrients including nitrogen, phosphate and ammonia, which adversely impact the environment including the jurisdictional adjacent wetlands, San Antonio Creek and the Petaluma River.
>
> Since the beginning of operations, Redwood has discharged storm water containing pollutants and non-storm water pollutants from its landfill site into adjacent wetlands, San Antonio Creek and/or their tributaries, in violation of the General Permit, during at least every rain event over 1 inch as measured by the National Oceanographic and Atmospheric Administration. These violations of the Clean Water Act are ongoing. Redwood will continue to be in violation of the General Permit each day it discharges non-storm pollutants and contaminated storm water from its landfill, sludge and composting operation which cause or threaten to cause

United States District Court
For the Northern District of California

> pollution, contamination or nuisance which adversely impacts human health or the environment.

With respect to the second allegation (regarding no NPDES permit), the notice alleged in part (at 6):

> Redwood's continuing violations of effluent standard or limitations, permit condition or requirement and/or orders issued by the Administrator or a State with respect to such standard or limitation under CWA § 505(a)(1), CWA § 402(b) and CWA § 301(a) the Code of Federal Regulations, and the Basin Plan, are exemplified by Redwood's illegally discharging to waters of the United States without a NPDES permit.
>
> To prevent any confusion River Watch wishes to make it clear that this second allegation relates to point source discharges rather than non-point sources discharges covered by the General Permit. Due to the fact that the landfill is itself a point source, it is discharging from this point source via tributary ground waters to San Antonio Creek, the Petaluma River and adjacent wetlands, all waters of the United States.
>
> Due to the hydrological connection between the waste disposal site and waters of the Untied States, point source discharges occur every day, as evidenced by the groundwater monitoring results referenced above. Therefore, this Notice of Violations covers all point source discharges occurring from February 6, 2002 through February 6, 2007. Redwood has violated the Clean Water Act, the Basin Plan and the Code of Federal Regulations for discharging pollutants into waters of the United States without a NPDES permit. Redwood has done little or nothing to abate these violations. River Watch believes these violations are ongoing and continuing.

Plaintiff filed the complaint against defendant on October 1, 2007, seeking injunctive relief, civil penalties, restitution and remediation under the Act.

**ANALYSIS**

A party cannot bring an action under the Act without giving notice of the alleged violation at least sixty days before commencing suit. Notice under this subsection "shall be given in such manner as the [EPA] Administrator shall prescribe by regulation." 33 U.S.C. 1365(b)(1)(A). The EPA issued the following regulation regarding notice, which was operative at the time the complaint was filed:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or

United States District Court
For the Northern District of California

> persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. 135.3(a)(1973). If the plaintiff fails to comply with these notice provisions, then the suit must be dismissed for lack of subject-matter jurisdiction. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31–33 (1987).

The Ninth Circuit has elaborated on what constitutes sufficient notice under the Act. In *San Francisco BayKeeper, v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002), the Ninth Circuit held:

> The regulation does not require, however, that plaintiffs "list every specific aspect or detail of every alleged violation." "The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." Notice is sufficient if it is specific enough "to give the accused company the opportunity to correct the problem." In short, the Clean Water Act's notice provisions and their enforcing regulations require no more than "reasonable specificity."[1]

The Ninth Circuit also recognizes that defendants have better access to their records than plaintiffs do. According to *Tosco*, 309 F.3d at 1158–59 (emphasis in original):

> We hold that [plaintiff's] allegation that coke spilled into the slough on each day of ship loading — even on days for which [plaintiff] did not provide specific dates — was sufficiently specific to fulfill its notice obligation. [Defendant] is obviously in a better position than [plaintiff] to identify the exact dates, or additional dates, of its own ship loading. The notice regulation does not require [plaintiff] in such a situation to provide the exact dates of alleged violations; rather, it requires only that [plaintiff] provide "sufficient information to *permit the recipients* to identify . . . the date or dates." Given the knowledge that [defendant] already had, [plaintiff's] letter was specific enough to notify [defendant] of the nature of the alleged violations, as well as the likely dates of those violations.

Plaintiffs therefore are not obligated to provide every detail of the alleged violations; they just have to provide sufficient information for defendants to identify the nature, locations, and dates of the conduct in question.

Defendant argues that the notice was legally and factually inadequate to support subject-matter jurisdiction — *i.e.*, the notice fails to provide defendant with sufficient

---

[1] Unless indicated otherwise, internal citations are omitted from all cites.

information to identify (i) the activity alleged to constitute the violation, (ii) the location of the alleged violations, and (iii) the date(s) of the violations. This order finds that plaintiff's notice was sufficiently specific to support subject-matter jurisdiction.

**1. DOES THE NOTICE PROVIDE SUFFICIENT INFORMATION TO IDENTIFY THE ACTIVITY ALLEGED VIOLATION?**

The first allegation in the notice addressed the GISWP. The GISWP required dischargers in operation prior to October 1, 1992, to have developed and implemented a Storm Water Prevention and Pollution Plan ("SWPPP") no later than that date.[2] Plaintiff's notice alleged that defendant violated the terms of the GISWP by allowing various discharges from its facilities that exceeded EPA benchmarks, not fully developing or implementing a SWPPP, and failing to utilize "best management practices" (Compl. Exh. at 5).

Defendant claims that the notice failed to satisfy the "reasonably specific" standard articulated in *Tosco*. The notice did not allege with sufficient specificity what pollutants were being discharged, what activity constituted the violation (*e.g.*, filling, compacting, installing cover, cleaning equipment), or the specific standard, limitation or order alleged to have been violated. Moreover, the notice did not adequately explain how defendant failed to develop and implement a SWPPP and use the "best management practices."

That is not the case. Plaintiff's notice described the alleged violation and relevant standard — in contravention of the GWISP, Redwood failed to eliminate from its landfill operation non-storm water discharges, which contained metals, solvents, organics, toxins and nutrients (*e.g.*, nitrogen, phosphate, and ammonia). Contrary to defendants, this order finds that the SWPPP was not readily available to plaintiffs through the Regional Quality Board. Defendant therefore cannot claim that the notice failed to include specifics about how its SWPPP violated standards under the GWISP. Given the information plaintiff had access to, its description of the alleged violation and standard applied was sufficiently specific.

The second claim in the notice concerned NPDES permits. Pollutants cannot be discharged from a point source to waters of the United States without a NPDES permit.

---

[2] *See* General Permit No. CAS000001 (State Water Resources Control Board) Water Quality Order No. 97-03-DWQ issued pursuant to Section 402 of the Act.

United States District Court
For the Northern District of California

Clean Water Act Section 301 and 33 U.S.C. 1311. The complaint alleges that defendant illegally discharged pollutants without a NPDES permit. This second allegation differs from the first in that it relates to *point source* discharges rather than *non-point source discharges* (which are covered by the GISWP). The landfill constitutes a point source that discharges pollutants, plaintiff argues.[3]

Defendant counters that plaintiff's notice was insufficient because it did not satisfy the requirement to identify the alleged activity constituting a violation. Part of the notice stated, "Due to the hydrological connection between the waste disposal site and waters of the United States, point source discharges occur every day, as evidenced by the groundwater monitoring results referenced above" (Compl. Exh. A at 6). Moreover, plaintiff could not attempt to cure its "factually deficient" notice by referencing monitoring reports. This all was insupportably vague, says defendant.

This order disagrees. The notice contained enough information to identify the activity alleged to violate the prohibition against discharging pollutants from a point source without a NPDES permit. *First*, the notice went into detail about the adequacy of defendant's leachate collection and removal system ("LCRS"), which was supposed to be constructed along the entire perimeter of the landfill site to contain contaminated groundwater. The notice stated that a regulator from the Regional Water Quality Control Board for the San Francisco Bay Region, Alan Friedman, expressed concerns in a 2004 email about the effectiveness of the LCRS. He made specific recommendations for monitoring the effectiveness of the LCRS. *Second*, the notice cited specific groundwater reports that identified pollutants in the water that exceeded water-quality standards — *e.g.*, Annual Reports 2005 and 2006, and the First Semiannual

---

[3] Defendant claims that an entire landfill is not considered a "point source" under the Act, which defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. 1352. This order finds that defendant's reading of the statute is too narrow. *First*, the list in the statute is not exhaustive; it specifically states that a point source includes but is *not limited* to the list items. *Second*, case law allows for a broad definition of point source. *See Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055 (5th Cir. 1991) (cattle feedlot was a point source); *Williams Pipe Line Co. v. Bayer Corp.*, 964 F. Supp. 1300 (S.D. Iowa 1997) (pipeline's facility was a point source); *Fishel v. Westinghouse Elec. Corp.*, 640 F. Supp. 442 (M.D. Pa. 1986) (hazardous waste overflows from lagoon constituted discharge of pollutants to navigable waters from a point source).

United States District Court
For the Northern District of California

Groundwater Monitoring Report of 2006. For example, the notice stated, "Present in amounts that exceed State of California Minimum Contaminant Levels as well as historic background limits are ammonia (Annual Reports 2005 and 2006), iron (Annual Report 2005, issued May 23, 2006), acetone and carbon disulfide (First Semiannual Groundwater Monitoring Report of 2006)" (Compl. Exh. at 4). The notice and the reports cited by the notice provided sufficient notice as to the nature of the alleged violations against defendant. Defendant argues that the reports generally and consistently found that no volatile organic compounds were detected at concentrations at or above the reporting limit in any groundwater monitoring wells, and inorganic results were generally within historic concentration ranges. Defendant then admits that the notice cited instances where various volatile organic and inorganic compounds were detected by the reports as exceeding reportable limits — but these instances were caused by factors outside defendant's control. At this point of the proceedings, because there may be a factual dispute on this matter, this order will not dismiss plaintiff's complaint on these grounds.[4]

**2. DOES THE NOTICE PROVIDE SUFFICIENT INFORMATION REGARDING THE LOCATION AND DATES OF THE ALLEGED VIOLATIONS?**

This order finds that the notice was sufficiently specific with respect to the location of the alleged violations. It is not always necessary for plaintiff to identify specific locations and dates. The violations were ongoing and did not point to specific discharges. The Ninth Circuit has held, "As the district court correctly noted, the failure to develop and implement pollution prevention plans are violations 'occurring at the facility in general.' Moreover, 'the deficiencies in these plans are ongoing, so there is no specific date that can be alleged as the date of the violation.'" *Natural Resources Defense Council v. Southwest Marine*, 236 F.3d 985, 996 (9th Cir. 2000).

Regarding the GISWP claim, the notice already described the location of the landfill facility and its relation to the surrounding waters. The notice also alleged that Redwood has engaged in illegal discharges "during at least every rain event over 1 inch as measured by the

---

[4] These monitoring reports were not attached to the complaint. Rather, defendant includes the reports in its reply.

United States District Court
For the Northern District of California

National Oceanographic and Atmospheric Administration" (Compl. Exh. at 5). This is sufficient.

With respect to the second allegation regarding the NPDES permit, defendant claims that the notice did not explain where the offending discharges originate or exit from the landfill, which was problematic considering defendant uses about four hundred acres (out of the total six hundred acres) for disposal activities and there are 32 storm-water drainage points on the property. Plaintiff also identified the affected water bodies in too generic a manner and failed to "specify any reasonable date range for the alleged discharges or the number of occurrences," defendant argues (Br. 6).

This order finds that the notice provided enough information to the recipient to identify the location of the alleged discharges. Plaintiff claims that "[t]he groundwater monitoring reports referenced [in the notice] identify by number the specific wells where the samples were taken, thereby informing defendant of locations where pollutants are released from the landfill into groundwater which then migrate to adjacent surface waters" (Opp. 9). As the Ninth Circuit noted in *Tosco*, defendant is in the best position to know the contents of its these reports, which were prepared for defendant. With the help of the reports, defendant should be able to locate where leachate is seeping from the landfill into surrounding waters.

Defendant tries to distinguish the situation in *Tosco*. It argues that the defendants there had more background knowledge in addition to the notice letter, whereas in the instant case, mere reference to the monitoring reports is different from the knowledge defendants had in *Tosco*. That is not necessarily the case. Monitoring reports can still provide enough background information to make the notice sufficiently specific.

With respect to defendant's complaint about the lack of dates, this order finds that plaintiff specified a reasonable date range. Again, as the Ninth Circuit held in *Tosco*, plaintiff is not required to provide the exact dates of alleged violations; it need only provide "sufficient information to *permit the recipients* to identify . . . the date or dates." Furthermore, "[w]here [plaintiff] alleged an ongoing violation of [defendant's] obligation to implement best available technology to prevent storm water pollution, no specific dates were needed." *Tosco*, 309 F.3d

United States District Court
For the Northern District of California

at 1158. Plaintiff alleges an ongoing violation here: "Point source discharges *occur every day*, as evidenced by the groundwater monitoring results referenced above." The notice specifically stated, "[T]his Notice of Violations covers all point source discharges occurring from February 6, 2002 through February 6, 2007" (Compl. Exh. at 6). The district court in *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F.Supp. 792, 800 (E.D. Cal. 1995) (Levi, J.), held that the following portion of the notice letter failed to give sufficient notice of dates: "For the previous five years on hundreds of occasions you have violated your [NPDES] permit." In the instant case, because the notice alleged that the illegal discharges occurred every day, plaintiffs do not need to pinpoint a specific date. Moreover, *California Sportfishing* was a district court case decided before *Tosco*. Defendant is sufficiently put on notice of the date range of alleged violations.

**CONCLUSION**

Because this order finds that plaintiff's notice was sufficiently specific in identifying the alleged environmental violations, the Court is not divested of subject-matter jurisdiction. Accordingly, the motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 21, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE